**UNITED STATES of America,**
**Appellant,**

v.

**Donald HILLEGAS, Defendant-Appellee.**

**No. 706, Docket 78–1004.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 10, 1978.

Decided April 14, 1978.

As Amended May 3, 1978.

---

Frederick P. Hafetz, Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty., for S. D. New York, Allen R. Bentley, Richard D. Weinberg, Robert J. Jossen, Asst. U. S. Attys., New York City, of counsel), for appellant.

Mark Lemle Amsterdam, New York City, for defendant-appellee.

Before HAYS, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

■ This appeal by the Government pursuant to 18 U.S.C. § 3731 from dismissal of an indictment raises the question of whether, under the Interim Statement of Time Limits and Procedures for Achieving Prompt Disposition of Criminal Cases (the "Current Plan"), which was adopted by the Southern District of New York effective July 1, 1976, pursuant to the Speedy Trial Act of 1974, 18 U.S.C. § 3165 (the "Act"), the time limits prescribed by the Current Plan are tolled during the period between the Government's dismissal of its complaint and its reinstitution of criminal proceedings by indictment. We hold that the Plan must be interpreted to toll the Act's time limits during this period and accordingly reverse the judgment of the district court.

On April 23, 1974, appellant Donald Hillegas was arrested and a complaint was filed against him by the Government in the Southern District of New York charging him with conspiring with various persons, including Frederic Glenn and Adolph Rivera, to distribute lysergic acid diethylamide ("LSD") in violation of 21 U.S.C. § 846. The complaint was based on the post-arrest statements of Glenn and Rivera, who had been cooperating with the Government after their own arrests based on their sale of LSD to undercover agents on April 16, 1974,

to the effect that appellant had been their source for the LSD. Shortly after the filing of the complaint Glenn and Rivera decided to discontinue their cooperation with the Government and to contest the criminal charges against them. As a result the Government, which had based its case against appellant entirely on their statements and had no other evidence, could no longer proceed with the prosecution of appellant. Accordingly it dismissed the complaint against him on May 28, 1974.[1]

In July 1974 an indictment was filed against Glenn, Rivera and others, to which they pleaded not guilty. Because of circumstances not relevant to the present appeal, including a successful interlocutory appeal by the Government from the suppression of evidence, proceedings with respect to the sentencing of Rivera, who had pleaded guilty as a Young Adult Offender, and an application to the Department of Justice for permission to grant immunity to Glenn, the case against Glenn and Rivera dragged on for more than two and a half years. Upon completion of that prosecution the Government in the fall of 1977 obtained the Grand Jury testimony of both Glenn and Rivera and on October 21, 1977, a two-count indictment was filed against appellant charging him with conspiring with Glenn, Rivera and others to distribute LSD in violation of 21 U.S.C. § 846 (Count One) and with distributing and possessing with intent to distribute 10,000 dosage units of LSD on April 15, 1974, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) (Count Two).

On November 10, 1977, Hillegas moved to dismiss the indictment on grounds of pre-indictment delay in violation of his constitutional rights and failure to comply with the Southern District's Current Plan. On December 16, 1977, Judge Charles H. Tenney granted the motion on the ground that the Government had failed to file the indictment within the time limits fixed by the Plan and dismissed the indictment with prejudice. Judge Tenney held that dismissal was mandated by § 3(a) of the Current Plan, which provides that where an arrest of an individual occurred prior to July 1, 1976, any indictment against him in connection with the charge must be filed within 60 days of July 1, 1976, and by § 7 of the Current Plan, which requires that the Government be ready for trial within six months from the earliest of several events which include the dates of arrest and filing of the complaint. Although we had held in *United States v. Flores*, 501 F.2d 1356 (2d Cir. 1974), that the Government's dismissal of a complaint against an individual should toll a six months readiness rule contained in an earlier plan adopted by the Eastern District of New York, the district court concluded that the intervening adoption of the Speedy Trial Act and of the Current Plan, with their more specific provisions, rendered *Flores* invalid, relying upon several more recent decisions of the Southern District of New York.[2] Judge Tenney further stated that even if the *Flores* rule remained generally applicable it should not be applied to this case, since he concluded that the Government had failed to proceed expeditiously against Hillegas even after the testimony of Glenn and Rivera became available following their convictions. He suggested that the Government should have attempted to obtain an indictment against Hillegas within 60 days after July 1, 1976, by obtaining immunity for Glenn promptly after completion of proceedings against him and bringing him before the grand jury. Thereafter, Judge Tenney explained, the Government could have sought continuances and, if Glenn or Rivera, refused to testify, claimed that the time was excludable under 18 U.S.C.A. § 3161(h)(3)(A) because of the

1. The Magistrate's Criminal Calendar for May 28, 1974, shows that on that date the complaint was dismissed. In order to confirm that this action had been taken with the Government's consent, the Assistant United States Attorney in charge of the case submitted a formal written request on July 13, 1974, which was consistent with the practice of the United States Attorney's Office and that of the Magistrate's Clerk.

2. The district court decisions cited by Judge Tenney were *United States v. Koch*, 438 F.Supp. 307 (S.D.N.Y. 1977), *adhered to on reh.* (Dec. 19, 1977); *United States v. Lopez*, 426 F.Supp. 380 (S.D.N.Y. 1977); and *United States v. Beberfeld*, 408 F.Supp. 1119 (S.D.N.Y. 1976).

"unavailability of . . . an essential witness." The Judge dismissed the indictment with prejudice under § 11(e) of the Current Plan, which authorizes the court to dismiss a case for unnecessary delay pursuant to Rule 48(b), F.R.Cr.P., where the Government's delay in presenting the case to a grand jury was "unexplainable" and thus "unnecessary." In view of the dismissal under the Current Plan the court found it unnecessary to pass upon appellant's constitutional claims.

## DISCUSSION

The administration of justice depends heavily upon the prompt processing of criminal proceedings. Unreasonable or unnecessary delay can not only violate the rights of an accused under the Sixth Amendment but also undermine respect for law and thus harm the public. As delays increased it was recognized, both by the bench and bar as well as by Congress, that stringent measures would have to be adopted to insure that those accused would be brought to trial as promptly as possible consistent with their constitutional rights.

In 1971, after the American Bar Association's Project on Minimum Standards for Criminal Justice had published its Standards Relating to Speedy Trial, this Circuit spearheaded efforts to reduce delay in the prosecution of criminal cases by publishing Rules Regarding Prompt Disposition of Criminal Cases. These Rules sought to place the onus on federal prosecutors to avoid delay in the prosecution of criminal cases by requiring them to be ready for trial within six months from the date of arrest or the filing of a formal charge against an accused, whichever might be earlier, or face dismissal of the charge. See

*Hilbert v. Dooling,* 476 F.2d 355 (2d Cir. 1973) (en banc). These Rules were followed by the Supreme Court's adoption of Rule 50(b), F.R.Cr.P., effective October 1, 1972, pursuant to which each district court drafted Rules for the Prompt Disposition of Criminal Cases, effective in 1973. The philosophy behind the latter Rules was essentially the same as that expressed in those that had earlier been promulgated by this Circuit.

These initial efforts to accelerate criminal justice were followed by Congress' enactment of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161, *et seq.,* which took a somewhat harder line. Instead of merely requiring the prosecutor to be ready within a given period of time or face dismissal of the indictment, the Act provided that after a three-year phase-in charges might be dismissed if a defendant were not indicted, arraigned, and actually brought to trial within set periods of time totalling a maximum of 100 days from the date of arrest or service of summons after exclusion of certain necessary periods of delay. Pursuant to the Act the Southern District of New York in 1976 adopted the Current Plan, which preserved some of the features of the earlier plan enacted under Rule 50(b), including the readiness requirement imposed on federal prosecutors, but also added the terms and conditions imposed by the Speedy Trial Act itself.

■ The policy and purpose of the Act and of all of these speedy trial plans, including the Current Plan, have been to expedite the processing of *pending* criminal proceedings, not to supervise the exercise by a prosecutor of his investigative or prosecutorial discretion at a time when no criminal proceeding is pending before the court.[3]

---

**3.** Hillegas maintains that several general statements concerning the purposes of the Act and the Current Plan indicate an intent to eliminate all delay in bringing individuals to trial, including that occurring while no charges are pending. However, these statements must be viewed in light of several circumstances limiting their import. First, the discussion in the relevant House and Senate reports concerning the causes of delay in the criminal justice system focuses on the processing of cases that have been filed. See, e. g., S.Rep. No. 93–1021,

93d Cong., 2d Sess. 6–7 (1974) ("the Committee has concluded that from the point of view of crime control and the constitutional rights of defendants, the most serious aspect of delay in the Federal criminal justice system has to do with the period between arrest and the commencement of trial or retrial resulting from appeal."); H.R.Rep. No. 93–1508, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, p. 7408 ("The Committee believes that the right to a speedy trial belongs not only to the defendant, but to society as well. A defendant who is

Indeed, to invade the latter area might well involve the legislative and judicial branches in matters that fall primarily, if not exclusively, within the jurisdiction of the executive branch under Article 2, § 3 of the Constitution, which provides that the President "shall take Care that the Laws be faithfully executed."

 By the same token, neither the Act nor the Plans were intended to impose time limits in addition to those provided for by the Constitution with respect to government investigations undertaken while the defendant is not the subject of formal proceedings. Thus, to the extent that the Act and Current Plan seek to implement the accused's constitutional right to a speedy trial, we are constrained by the admonition of the Supreme Court that "it is either a formal indictment or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment," *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). When charges are pending against him, the accused may face restraints, including undue and oppressive incarceration, anxiety and concern attributable to the pending public accusation, interference with his freedom of movement even though he is released on bail, possible disruption of his employment, public obloquy, and the draining of his time and financial resources in the preparation of his defense. For these reasons he is entitled to a prompt disposition of the charges against him. The line is drawn, however, at the point where charges are actually pending against an individual. Although a person under investigation may suffer some apprehension or anxiety, his guarantee against pre-prosecutorial delay lies solely in the applicable statute of limitations and in the Fifth Amendment's Due

charged with a violation of the law becomes a burden to society in the sense that his status consumes the time and energy of all components of the criminal justice system with which he comes in contact: the police, magistrate, clerks of court, probation officers, judges and others."). This description of the problem is a guide to the nature of the intended solution. Second, moreover, the scheme arrived at by

Process Clause. Only if he can show that the Government failed to obtain an indictment against him before the expiration of the applicable statute of limitations or that the Government's delay violates "fundamental conceptions of justice," resulting in substantial prejudice to him, may he obtain a dismissal of the indictment based on delay at a time when no charges against him were pending. *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

It is in this context that we must consider whether, once a complaint has been dismissed for lack of proof at the instance of the Government, the clock nevertheless continues to run under the Act and Current Plan as if the case were still pending. Faced with just this situation in *United States v. Flores,* 501 F.2d 1356 (2d Cir. 1974), we held that the time limits of the Eastern District's Rule 50(b) Plan, which required the Government to be ready within six months of arrest, were tolled from the dismissal of the complaint to the filing of the indictment, stating:

"The Government contends, and we accept, that for the period after the dismissal of the complaint against appellant and prior to appellant's indictment the clock should not run against it. During this period appellant was not subject to any of the disabilities associated with being under arrest, the subject of a complaint or indictment, or in the midst of a criminal prosecution. He was under no more jeopardy than any other citizen, and the fact that he might have been under investigation has no more effect after the dismissal on the running of the six-month period than it would have had before his arrest, that is none." *United States v. Flores, supra,* 501 F.2d at 1359–60.

In *United States v. McClean,* 528 F.2d 1250 (2d Cir. 1976), we later applied this same

Congress includes two provisions, § 3161(d) and § 3161(h)(6), see pp. 2514–2516, *infra,* which operate to exclude from the purview of the Act delay during which no charges are pending. Finally, there is no indication that the drafters of the Current Plan were acting on the basis of an assessment of the problem of delay substantially different from Congress'.

principle to a 5½-month period during which an indictment remained dismissed prior to the filing of a new indictment.

We find the rationale of *Flores* and *McClean* to be equally compelling here. After the Government's dismissal of the complaint against him appellant, like the defendants in *Flores* and *McClean,* was no longer under any of the restraints associated with arrest and the pendency of criminal charges against him. He was free to come and go as he pleased. He was not subject to public obloquy, disruption of his employment or more stress than any citizen who might be under investigation but not charged with a crime.[4] Unless and until a formal criminal charge was filed against him, neither he nor the public generally could have any legitimate interest in the prompt processing of a nonexistent case against him.

In refusing to follow *Flores* Judge Tenney relied principally on (1) the literal language of §§ 3(a) and 7 of the Current Plan,[5] (2) a provision in § 10(a) of the Current Plan [6] to the effect that "periods of delay are excludable only as provided in the Speedy Trial Act of 1974," which contains no provision specifically excluding a period of the type involved here, and (3) the fact that *Flores* dealt with the interpretation of the "six months readiness" provision of the predecessor plan adopted pursuant to Rule 50(b), F.R.Cr.P., rather than with the Current Plan enacted under the Act. In our view none of these reasons justifies a departure from the teaching of *Flores.*

It is true that § 3(a) of the Current Plan provides that "if the arrest or service [of summons] occurs before July 1, 1976, [the indictment must be filed] within 60 days of July 1, 1976." Section 7 further provides that the Government must be ready for trial within six months from the date of arrest, service of summons, or filing of a complaint or indictment, whichever event is earliest. But the Plan's language must be construed in the light of its purpose, which was to expedite the processing of *pending* criminal proceedings, not cases which have been dismissed. Judge Learned Hand once observed, "[I]t is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning," *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960), "There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than

---

4. It is, of course, conceivable that substantial arrest-related disabilities may persist even after the dismissal of a criminal complaint. See, e. g., *United States v. Lopez, supra* (Government dismisses complaint against defendants but refuses to return some $8,000 seized from them). We need not determine the effect of such Government conduct on the tolling of Plan limits in the context of the present case. Here the only arguable post-dismissal "restraint" lay in the Government's retention of appellant's bail money, and that terminated on July 26, 1974, some eight weeks after the date of dismissal. Exclusion of this interval from the tolled period would not affect the result in this case, and until presented with a defendant for whom such a delay assumes critical significance for tolling purposes, we decline to address the issue.

5. Section 3(a) of the Current Plan provides in pertinent part:

"*Time Limits.* If an individual is arrested or served with a summons and the complaint charges an offense to be prosecuted in this district, any indictment or information subsequently filed in connection with such charges shall be filed within the following time limits:

"(1) If the arrest or service occurs before July 1, 1976, within 60 days of July 1, 1976."

Section 7 further provides:

"Notwithstanding any longer time periods that may be permitted under sections 3, 4, and 5, in all cases the government must be ready for trial within six months from the earliest of the following dates:

"(a) The date on which the defendant is arrested;

(b) The date on which the defendant is served with a summons; or

(c) The date on which a complaint, indictment, or information is filed, *except* when a sealed indictment is filed, the date on which the indictment is unsealed."

6. Section 10(a) of the Current Plan provides in pertinent part:

"10. *Exclusion of Time From Computations.*

"(a) *Applicability.* In computing any time limit under sections 3, 4, 5, 6, or 7, the period of delay set forth in 18 U.S.C. § 3161(h) shall be excluded."

to wince at carrying out that purpose because the words used do not formally quite match with it," *Federal Deposit Ins. Corp. v. Tremaine,* 133 F.2d 827, 830 (2d Cir. 1943), see also *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir. 1944) (Hand, J., concurring), *affd.,* 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945).

That §§ 3(a) and 7 of the Current Plan were not intended to include a post-dismissal period in determining compliance with the time limits fixed by the Act is confirmed by other provisions of the Act and the Plan, which may not have been brought to the attention of the district court. Section 3161(d) of the Act,[7] for instance, provides that where a complaint is dismissed and a complaint or indictment is later filed charging the defendant with the same offense or an offense based on the same conduct, the time periods fixed by §§ 3161(b) and (c) shall apply to the new complaint or to the indictment as the case may be. In explaining the purpose of this provision the Senate Judiciary Committee stated:

"To require a prosecutor to conform to indictment and trial time limits which were set by the filing of the original complaint in order to reopen a case on the basis of new evidence would be an insurmountable burden. *Thus, when subse-*

7. Section 3161(d) of the Act provides:
 "(d) If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be."

8. Section 3161(h)(6) of the Act excludes:
 "(6) If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time

*quent complaints are brought, the time limits will begin to run from the date of the filing of the subsequent complaint."* S.Rep. No. 93–1021, p. 33. (Emphasis added).

In addition, § 3161(h)(6) of the Act,[8] which deals with one of the periods of delay to be excluded in computing the time within which an indictment must be filed or trial commenced, provides that if an indictment is dismissed upon the Government's own motion and the defendant is thereafter charged with the same offense, the period of delay from the date when the charge is dismissed to the reinstitution of charges shall be excluded in computing the time within which an indictment must be filed.

Taken together, §§ 3161(d) and (h)(6) make it clear that Congress' purpose was to disregard the period after dismissal of a complaint and prior to the filing of an indictment for the same offense. Although § 3161(h)(6), read literally, suspends the running of the Act's time limits upon the Government's dismissal of an *indictment,* as distinguished from a complaint, it follows *a fortiori* that upon a voluntary dismissal of a complaint the period thereafter up to the filing of an indictment should be excluded, if not disregarded entirely pursuant to § 3161(d).[9] It would indeed be anomalous

limitation would commence to run as to the subsequent charge had there been no previous charge."

9. The Government argues that in this case application of § 3161(d) of the Act requires that the period from April 17, 1974, when the complaint was filed against Hillegas, until May 28, 1974, when it was dismissed, be disregarded entirely in determining whether there was compliance with the Current Plan. The danger of this construction, as we noted in considering the similar issue in *Flores,* is that "[i]f merely dismissing a complaint or indictment would expunge the time utilized before the dismissal in the determination of the six-month limit, the Plan would provide no incentive to increased efficiency and attention to delayed cases," 501 F.2d at 1359 n.3. However, since we hold that the time limits fixed by §§ 3(a) and 7 of the Current Plan were tolled during the period from May 28, 1974, when the complaint was dismissed, to October 21, 1977, when the indictment was filed, thus reducing the total time from arrest to indictment to a period well within the time limits fixed by the Current Plan, it becomes unnecessary for us to decide this issue.

to provide that a post-dismissal period could be disregarded when a person is reindicted but not when proceedings are reinstituted by the filing of an original indictment, as in the present case.

In addition to the rationale adopted by us in *Flores,* there are other cogent reasons for tolling the Current Plan's time limits when no charges are pending against a defendant. To continue the clock running during this period might well discourage dismissals of complaints by the Government for lack of evidence and lead it, on the contrary, to bend every effort to seek indictment immediately even though solely on the basis of hearsay, following which it would burden the court with repeated applications for postponements of trial because of the unavailability of key witnesses who would be expected to cooperate after they had been tried and convicted or after permission had been granted by the Department of Justice to grant them immunity. Such a course of conduct would not only expose the indicted defendant to all the restraints and disabilities flowing from the pendency of an indictment against him but defeat the public interest by clogging criminal calendars with cases in limbo and forcing already overburdened district judges needlessly to devote valuable time to applications for continuances under the Plan. The effect would be to defeat the objectives of the Act and Plan, which are the prompt disposition of pending criminal proceedings.

In the present case, for instance, once Glenn and Rivera decided to litigate charges against them, the Government was no longer in a position to seek an indictment, since their unsworn post-arrest statements clearly would be inadmissible against Hillegas, *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Thereafter the Government was under an obligation not to seek an indictment until it had in hand sufficient proof to establish the guilt of appellant beyond a reasonable doubt. *United States v. Lovasco,* 431 U.S. 783, 790–91, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Although it may have been possible

to obtain Glenn's testimony upon a grant of immunity in 1976, the Government was entitled as a matter of prosecutorial discretion not to proceed until it also had the testimony of Rivera, which did not become available until 1977.

For all of these reasons we are satisfied that the present case should be governed by our decisions in *Flores* and *McClean.* We find no legally significant distinction for present purposes in the fact that *Flores* dealt with a Rule 50(b) plan rather than a plan under the Act, since the objectives of both are identical and, if anything, the plan in *Flores* did not present as strong a case for tolling as that here, since it lacked the definite indications of intent provided by §§ 3161(d) and (h)(6) of the Act. We have examined the district court decisions in *Koch, Lopez,* and *Beberfield, supra,* also relied upon by Judge Tenney, and find them either to be distinguishable from the present case or unpersuasive as reasons for overruling *Flores* or holding it inapplicable here.

■ In view of its reliance upon the Current Plan and Act as the bases for its dismissal of the indictment, the district court did not address itself to appellant's contention that the three-year delay from arrest to indictment in the present case violated his rights under the Fifth and Sixth Amendments. However, whether the period from dismissal of the complaint to indictment is judged by the standards of *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), or those of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the record does not reveal any violation of appellant's constitutional rights. The indictment was filed well within the period fixed by the statute of limitations. There is no showing that Hillegas suffered any legally recognizable prejudice from the delay, such as loss of evidence that might otherwise have been available, or that the delay resulted from a Government effort to gain a tactical or strategic advantage over him.[10] On the

---

10. In an affidavit submitted to the lower court, Hillegas maintained that the Government's delay had prejudiced him (1) because the prosecution threatens to interrupt commercial endeavors that he has undertaken since the 1974 dismissal of the complaint; (2) because the

contrary, the Government acted in good faith and for a sound reason—the evidence required to convict had become unavailable. Nor is there any indication that Hillegas at any time demanded that the Government seek an indictment or that it proceed immediately to trial after one was filed.

The order of the district court is reversed and the case is remanded for proceedings consistent with the foregoing.

prospect of mounting a defense is "overwhelmingly depressing"; and (3) because two potential character witnesses have died in the inter-

im. All of these claims are plainly insubstantial.