UNITED STATES of America, Plaintiff-Appellant,

v.

Edgar LEONARD, Defendant-Appellee.

No. 250, Docket 80–1243.

United States Court of Appeals, Second Circuit.

Argued Oct. 29, 1980.

Decided Jan. 5, 1981.

---

**18.** See note 7 *supra.*

Denise Cote, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., S. D. N. Y., Mary Jo White, Asst. U. S. Atty., New York City, of counsel), for plaintiff-appellant.

Phylis Skloot Bamberger, New York City (The Legal Aid Society, Federal Defender Services Unit, of counsel), for defendant-appellee.

Before MOORE, MULLIGAN and OAKES, Circuit Judges.

MULLIGAN, Circuit Judge:

The Southern District Plan for Achieving Prompt Disposition of Criminal Cases (Plan), adopted pursuant to the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161 et seq., requires that a defendant be indicted within thirty-five days of arrest and that the Government be ready for trial within six months of arrest. Plan §§ 3(a) & (b), 7(a). The issue in this case is whether appellee Edgar Leonard's arrest on June 22, 1979, by cooperating federal and state narcotics agents, is properly characterized as "federal" rather than "state" for purposes of triggering the provisions of the Plan. The United States District Court for the Southern District of New York, Hon. Charles L. Brieant, held that the arrest was federal, thereby starting the limitations period. The indictment against appellee was dismissed as untimely. We reverse and order the indictment reinstated.

A one count federal indictment, filed on November 14, 1979, alleged that on March 1, 1979 appellee distributed and possessed with intent to distribute approximately one ounce of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). A superseding indictment filed on January 3, 1980 retained this count and also charged that appellee conspired between January 1, 1979 and October 15, 1979 to distribute heroin, as prohibited by 21 U.S.C. § 846.

The charges stemmed from an investigation of appellee conducted by agents of the New York Drug Enforcement Task Force (Task Force), an organization of federal, state, and city law enforcement officials acting in cooperation to uncover and apprehend federal and state narcotics law offenders. The Government asserts the evidence at trial will show that on March 1, 1979 appellee sold approximately one ounce of heroin to a Task Force informant. Largely as a result of that sale, the Task Force agents on March 20, 1979 obtained from a United States Magistrate for the Southern District of New York an order for the installation of a pen register on appellee's

telephone. The informant was murdered on May 8, 1979. Thereafter a New York County Assistant District Attorney applied for and received approval from a justice of the Supreme Court of the State of New York for a wiretap on appellee's phone from May 29 through June 27, 1979. The same Assistant District Attorney, from the latter part of May through appellee's arrest on June 22, supervised the Task Force investigation and the wiretap interceptions.

On June 22, on the basis of monitored conversations and observations of appellee's movements during that day, the Task Force agents believed that he was transporting narcotics in his car. The agents stopped the car and Leonard threw a paper bag into the street. The bag contained no narcotics but $10,000 in cash was found in it. On the basis of the agents' knowledge of the March 1 sale and of Leonard's subsequent conversations and movements, there is no question as to the legality of that arrest. Leonard was taken to the Drug Enforcement Agency headquarters in New York City. The state prosecutor who was supervising the investigation, upon learning of the arrest, sought and received from a New York State Supreme Court Justice a warrant to search Leonard's apartment. When that search turned up no evidence of narcotics trafficking, the state prosecutor advised Leonard that he was not charged with any crime at that point and told him that he was free to leave. He also returned to Leonard the $10,000 which was in the paper bag retrieved by the agents. The state wiretap on Leonard's telephone was terminated on June 27, 1979.

After a two month hiatus, the Task Force requested the Office of the United States Attorney for the Southern District of New York to apply for a federal complaint and arrest warrant for narcotics possession and sale. A United States Magistrate for that district issued the complaint and the warrant on September 21, 1979, and appellee was arrested, again by Task Force agents, on October 16, 1979. Appellee was arraigned on the original November 14 indictment on November 21, 1979.

On Leonard's arraignment Judge Brieant on his own motion raised the speedy trial issue. Leonard then moved to dismiss the indictment, contending that the original June 22 arrest was a federal arrest which triggered the Speedy Trial Plan and required the Government to announce its readiness for trial no later than December 22, 1979. The District Court agreed, and, finding that the Government was not ready for trial before January 4, 1980, dismissed the indictment as untimely in an opinion and order filed on March 12, 1980. In an order filed on June 4, 1980, the district court granted reargument but adhered to its original decision. This appeal followed.

I

■ The crucial issue on this appeal is whether or not the June 22, 1979 arrest was properly characterized as federal by the District Court. It is conceded that a state arrest could not commence the running of the time limitations of the Southern District Plan. The Speedy Trial Act of 1974 on its face provides that its application is limited to those charged with "any Federal criminal offense which is in violation of any Act of Congress...." 18 U.S.C. § 3161(a), 1372(2). The Southern District Plan, as set forth in the margin,[1] clearly provides that

---

1. Section 3 of the Plan, which became effective July 1, 1976, provides in pertinent part:

    (a) Time Limits. If an individual is arrested or served with a summons and the complaint charges an offense to be prosecuted in this district, any indictment or information subsequently filed in connection with such charge shall be filed within the following time limits:

    \*    \*    \*    \*    \*    \*    \*

    (4) If the arrest or service occurs on or after July 1, 1978, but before July 1, 1979, within 35 days of arrest or service.

    (b) Measurement of Time Periods. If a person has not been arrested or served with a summons on a Federal charge, an arrest will be deemed to have been made at such time as the person (i) is held in custody solely for the purpose of responding to a Federal charge; (ii) is delivered to the custody of a Federal official in connection with a Federal charge; or (iii) appears before a judicial officer in connection with a Federal charge.

The relevant portion of section 7 states:

its time limitations are applicable only if the individual is arrested for an offense to be prosecuted in the Southern District. On June 22, Leonard was not formally arrested for a federal offense. Under those circumstances Section 3(b) of the Plan deems the arrest to be made at such time as the person arrested is held in custody solely for the purpose of responding to a federal charge, is delivered to the custody of a federal official in connection with a federal charge, or appears before a judicial officer in connection with a federal charge. None of these circumstances occurred when Leonard was arrested on June 22.

Judge Brieant reasoned that there was a substantial federal presence in all the Task Force operations. A United States Magistrate had authorized a "pen register" on March 20, 1979, and of course federal agents were members of the Task Force. This latter factor, however, clearly does not make the arrest "federal" per se. See *United States v. Mejias*, 552 F.2d 435, 440, 442 (2d Cir. 1977), cert. denied *sub nom. Padilla-Martinez v. United States*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). Since there was no formal agreement entered into between cooperating state and federal officials indicating whether the prosecution was to be for state or federal narcotics offenses, we must look to the record to make the proper characterization.[2] The basis for the arrest on June 22 was the wiretap interceptions which had been authorized by a justice of the Supreme Court of New York on the application of a New York County Assistant District Attorney. That

state prosecutor from late May until the arrest had supervised the investigation and the wiretap interceptions. He obtained the search warrant for Leonard's apartment after his arrest from a justice of the Supreme Court of New York. It was that state prosecutor who determined that there was no basis to hold Leonard for criminal prosecution, who returned the $10,000 cash to Leonard, and who authorized his release. None of the incidents set forth in Section 3(b) of the Plan ever occurred. The arrest, examination and release of Leonard were all supervised by a state prosecutor, which under these circumstances convincingly demonstrates that his arrest was for a state and not a federal offense. The earlier authorization by a federal magistrate of the "pen register" becomes insignificant in light of the further substantial involvement of the state prosecutor and the judicial intervention of state justices.

Judge Brieant pointed out that Leonard was later federally indicted for the same offenses that served as the basis for his initial arrest on June 22. He announced, therefore, that the "proper rule . . . is to regard the arrest which ultimately eventuates in a federal prosecution, as a federal arrest *ab initio* . . . and to extend to that arrest all rights and privileges arising under federal statutes or rules." While the Government contests this finding, we need not address the issue.[3] In *United States v. Lai Ming Tanu*, 589 F.2d 82 (2d Cir. 1978), this court, following *United States v. Mejias, supra*, held that even though a subsequent federal indictment is based on the

---

Notwithstanding any longer time periods that may be permitted under sections 3, 4, and 5, in all cases the government must be ready for trial within six months from the earliest of the following dates:

(a) The date on which the defendant is arrested; . . .

2. The arrest report does not indicate whether a federal or state Task Force agent made the actual arrest. In the absence of a prior agreement, however, the identity of the arresting officer would appear to be of little significance, as it may well have been a product of the expediency of the moment.

3. The district court also held that the Assistant District Attorney's decision to release appellee after his arrest was not the equivalent of the dismissal of a complaint by a judicial officer, see *United States v. Hillegas*, 578 F.2d 453 (2d Cir. 1978), and thus did not toll the limitations period under the Plan. In view of our determination that no violation of the Plan occurred here, it is unnecessary to address this alternative argument for reinstating the indictment. For the same reason we need not consider the district court's finding that the Government's failure to comply could not be deemed "excusable neglect." See Plan § 11(c).

same evidence and the same offense upon which an earlier state arrest was made, the time limitations of the Plan were not triggered by the prior state arrest. "[T]o force immediate federal indictments and trials of state arrestees in joint jurisdiction cases [would crowd] the federal court calendar in contravention of the purpose of the local district plan." 589 F.2d at 88, quoting *United States v. Mejias, supra,* 552 F.2d at 441.[4]

We therefore conclude that the federal indictment and statement of readiness for trial were timely under the Plan.

## II

█ Appellee moves to dismiss the appeal because the Government's notice of appeal was filed on June 13, 1980, more than thirty days after the March 12 decision. See 18 U.S.C. § 3731. He argues that the district court was without jurisdiction to enter its June 4 order, from which the Government appealed, because the Government's motion for reargument and reconsideration was filed beyond the thirty day period within which to appeal from the original order, see *Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 268, 98 S.Ct. 556, 562, 54 L.Ed.2d 521 (1978), and later than ten days from the date of the original order as required by Rule 9(m) of the General Rules of the Southern District of New York (1979).[5]

Rule 9(m) provided in pertinent part: A notice of motion for reargument shall be served within ten (10) days after the filing of the court's determination of the original motion .... There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked .... No affidavits shall be filed by any party unless directed by the court.

On March 24, 1980, the Government filed and served upon appellee a "Memorandum in Support of Motion for Reargument"[6] and two supporting affidavits.[7] The papers, however, did not include a separate "notice of motion," which was later supplied on June 3, 1980 at the district court's request.

Although the absence of a formal motion fell short of literal compliance with Rule 9(m), it does not merit dismissal of the appeal in this case. The Federal Rules of Criminal Procedure "are intended to provide for the just determination of every criminal proceeding" and "shall be construed to secure simplicity in procedure." Fed.R.Crim.P. 2; see 18 U.S.C. § 3731 (section governing Government appeals in criminal cases "shall be liberally construed to

---

4. *United States v. LaCruz,* 441 F.Supp. 1261 (S.D.N.Y.1977), relied on by the district court, is inapposite. There the defendant was arrested on a federal complaint and arraigned before a United States Magistrate. The United States Attorney declined prosecution and transferred the defendant's file to state officials. The state also declined to prosecute, and the Government conceded that it was responsible for the untimely filing of the resulting federal indictment. *Id.* at 1263. As discussed in the text, there was no such asserted federal jurisdiction over appellee Leonard's arrest, and no such "federal deference to a state prosecution." *United States v. Lai Ming Tanu, supra,* 589 F.2d at 90 (Oakes, J., concurring).

5. New rules for the conduct of criminal and civil proceedings in the Southern District became effective on October 31, 1980. General Rule 9(m)'s successor for civil cases is now found in Southern District Civil Rule 3(j), but there is no express criminal rule counterpart. *See United States District Court for the South-* ern District of New York Criminal Rule 3. Since the Government's motion for reargument was filed before November 1, 1980, Rule 9(m) applies to this proceeding.

6. The district court stated in the June 4 order that it had not authorized filing of either of the two affidavits submitted by the Government, in contravention of Rule 9(m). Nevertheless, it stated that it had "read and considered" one of the two, that of the New York County Assistant District Attorney. That affidavit has also been considered by this court.

7. These papers were filed twelve calendar days after the March 12 decision. However, March 22, when Rule 9(m)'s ten day period expired, fell on a Saturday. Rule 45, Fed.R.Crim.P., permits a motion to be filed on the first business day to follow a Saturday and Sunday when the time within which the motion is due expires on either of those two days.

effectuate its purposes"). The Government's memorandum, timely filed and served on March 24, was in substantial compliance with Rule 9(m), which must not be construed inconsistently with the Federal Rules. Fed.R.Crim.P. 57(a). The formal defect—absence of a separate piece of paper entitled "notice of motion"—did not prejudice appellee. The memorandum clearly advised the district court and appellee of the motion for reargument and the basis upon which it was made. It was served on appellee within the period required by the rule and well within the time for appeal; he cannot, therefore, complain that he was not apprised of the Government's intention until after the relevant dates had passed. See *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962). In cases such as this, where the substance of the motion is clearly and promptly communicated to the appellee, and the appellee demonstrates no substantial prejudice, we will not construe technical pleading requirements to defeat consideration of the appeal on the merits. *Id.; Simpson v. Norwesco, Inc.*, 583 F.2d 1007, 1009 n.2 (8th Cir. 1978); see *Yaretsky v. Blum*, 592 F.2d 65, 66–67 (2d Cir. 1979). The motion to dismiss is denied and the indictment is hereby reinstated.

OAKES, Circuit Judge (concurring):

I concur in the result. The majority opinion views the issue as whether the June 22, 1979, arrest by the joint city, state, and federal New York Drug Enforcement Task Force was properly characterized as "state" or "federal." Determining that it was a "state" arrest, the majority holds that the Southern District Plan for Achieving Prompt Disposition of Criminal Cases does not apply. I do not agree with the majority that the fact that the "arrest, examination and release of Leonard were all supervised by a state prosecutor," "under these circumstances convincingly demonstrates that his arrest was for a state and not a federal offense," slip op. 823. With respect to the period preceding the June arrest, I am more persuaded by Judge Brieant's characterization of events. In his memorandum and order below, he explained as follows:

[T]he Government attempts . . . to distinguish the similar case of *United States v. LaCruz*, 441 F.Supp. 1261 (S.D.N.Y.1977) by noting that this Task Force arrest was being "supervised" by an Assistant District Attorney of New York County, assigned to the Task Force, while noting that the Task Force arrest in *LaCruz* led to an immediate arraignment before a federal magistrate, and presumably would be counted as a "federal" arrest. This subtle distinction has little factual basis and carries no legal significance. There is a substantial federal presence in all Task Force operations. In Leonard's case, the "pen register" was obtained from a United States Magistrate, and thereafter the wiretap warrant, the next step in the investigation, was obtained from a state judge. Neither event marked this case as "state" or "federal." Long before the concept of joint task forces, or cooperative law enforcement procedures, it was proper, and indeed commonplace, in some parts of the country, for federal agents to obtain warrants from state judicial officers, and to bring arrested persons charged with federal crimes before state judicial officers for arraignment and bail to answer to the federal grand jury.

*United States v. Leonard*, No. S79 Cr. 826, at 7–8 (S.D.N.Y. Mar. 12, 1980). With respect to the conduct of the June seizure, as Judge Brieant also explains, "[i]n the normal course in processing its drug arrests, the Task Force determines initially which drug dealers it apprehends shall be tendered to federal law enforcement officials for prosecution, which shall be processed on the state level, and which shall be recruited as cooperating individuals," *id.* at 3. The identity of the supervising officer is presumably irrelevant to this determination.

Although I agree with the court below that the arrest cannot properly be called a "state" arrest, I do not believe that it was a federal arrest either, for the purposes of the Southern District Plan. The Plan's time limits go into effect when "an individual is

arrested ... and the complaint charges an offense to be prosecuted in this district" or when a person "(i) is held in custody solely for the purpose of responding to a Federal charge; (ii) is delivered to the custody of a Federal official in connection with a Federal charge; or (iii) appears before a judicial officer in connection with a Federal charge." *See* Section 3 of the Plan, in footnote 1 of the majority opinion. In this case, no complaint was issued and no federal (as well as no state) offense was charged. Thus as I see it, for the purposes of the Plan, *no* federal criminal proceeding was pending, and the time limits set forth in Section 3(a) therefore were not applicable to the June seizure, *United States v. Hillegas*, 578 F.2d 453, 456–57 (2d Cir. 1978).

I cannot accept Judge Brieant's holding that the better rule is to "regard the arrest which ultimately eventuates in a federal prosecution, as a federal arrest *ab initio*," *United States v. Leonard*, No. 579 Cr. 826, at 8. Even if this were the best rule, it would be inapplicable here because it was not, I believe, the June arrest but the October one which "eventuated" in a federal prosecution. More fundamentally, Judge Brieant's rule as applied here to a joint state and federal task force has an undesirable retroactive quality, which is illustrated by the fact that under the case law, had a state prosecution followed the June "chargeless" arrest and had the state case been subsequently dismissed, federal prosecutors would then have been free to seek an indictment, *United States v. Lai Ming Tanu*, 589 F.2d 82, 88–89 (2d Cir. 1978). Thus, the fortuity of an intervening state prosecution would have made the arrest purely a state arrest.

In all other respects I agree with Judge Mulligan's opinion.