CADY, Justice
(dissenting).
I respectfully dissent. Statutes and rules must only be applied to circumstances intended to be within their purview. The speedy-trial rule was never intended to apply when a person is detained by police at a roadside encounter for suspected criminal conduct but released at the scene without being told he was under arrest, without being transported to the police station for processing and appearance before a magistrate, without being charged with a criminal offense, without being subjected to the other processes of the prosecution of a crime, and without any disruption and burden associated with a criminal prosecution. The majority has misapplied the definition of an arrest under the speedy-indictment rule by failing to appreciate that an arrest takes on a different meaning in the context of the right to a speedy trial.
The starting point to interpret the speedy-indictment rule begins with the context in which the rule was conceived. See State v. Kamber, 737 N.W.2d 297, 299 (Iowa 2007) (recognizing statutes must be interpreted in their context because words can have different meanings in different contexts). Like the federal speedy-indictment rule, the purpose of Iowa’s speedy-indictment rule was to implement the constitutional right to a speedy trial. State v. Cennon, 201 N.W.2d 715, 718 (Iowa 1972); see also United States v. MacDonald, 456 U.S. 1, 7 n. 7, 102 S.Ct. 1497, 1501 n. 7, 71 L.Ed.2d 696, 703 n. 7 (1982) (recognizing the Speedy Trial Act of 1974 was intended “ ‘to give effect to the [Sjixth [Ajmendment right to a speedy trial’ ” (quoting S.Rep. No. 93-1021, at 1 (1974))); United States v. Hillegas, 578 F.2d 453, 456 (2d Cir.1978) (recognizing the Speedy Trial Act of 1974 was intended to implement the constitutional right to a speedy trial).
A “literal reading” of the constitutional right to a speedy trial reveals the right “attaches only when a formal criminal charge is instituted and a criminal prosecution begins.” MacDonald, 456 U.S. at 6, 102 S.Ct. at 1501, 71 L.Ed.2d at 702. This reading is the same for the right to a speedy trial under both the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution because the operative language of the two provisions is the same. Both constitutional provisions provide that in “all criminal prosecutions” the “accused” shall have a “right to a speedy ... trial.” As observed by the United States Supreme Court:
On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been “accused” in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The [Ajmendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him.
United States v. Manon, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, 474 (1971). Consequently, “it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision.” Id. at 320, 92 S.Ct. at 463, 30 L.Ed.2d at 479. Impor *255 tantly, this approach is what the speedy-indictment rule sought to implement: Accordingly, the language of Iowa’s speedy-indictment rule must be interpreted in the context of that point in time when a person becomes an “accused” in a criminal prosecution, not the point when a person is in police custody in such a way that a reasonable person would believe he or she is under arrest. An interpretation of an arrest based on a custodial setting is appropriate in implementing the rights against self-incrimination and the right to counsel, but not in implementing the right to a speedy trial. Compare State v. Evans, 495 N.W.2d 760, 762 (Iowa 1993) (right to counsel attaches when defendant is interrogated in police custody due to risk of self-incrimination in an inherently coercive environment), with State v. Gathercole, 553 N.W.2d 569, 573 (Iowa 1996) (rejecting the argument that a de facto arrest due to confinement by authorities triggers running of time for speedy trial). The rights serve different purposes and must be interpreted in light of those purposes. In other words, a rule implementing a constitutional right must be interpreted consistently with the aim and purpose of the particular constitutional right implemented.
The right to a speedy trial was designed to minimize the fears and burdens associated with a criminal prosecution, not those associated with a brief detention of a person by police for suspected criminal conduct that gives rise to fears of a future criminal prosecution. The speedy-trial right exists primarily
to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.
MacDonald, 456 U.S. at 8, 102 S.Ct. at 1502, 71 L.Ed.2d at 704. Similarly, the speedy-indictment rule exists to “ ‘expedite the processing of pending criminal proceedings.’” United States v. Varella, 692 F.2d 1352, 1358 n. 4 (11th Cir.1982) (quoting Hillegas, 578 F.2d at 456). It does not exist to “supervise the exercise by a prosecutor of his investigative or prosecutorial discretion at a time when no criminal proceeding is pending before the court.” Hillegas, 578 F.2d at 456. The government has traditionally been given substantial discretion under the separation-of-powers doctrine in decisions relating to the timing of an arrest. See United States v. Mays, 549 F.2d 670, 678 (9th Cir.1977).
Originally, Iowa’s speedy-indictment rule was written to make it clear that the time for the filing of the indictment was not triggered the moment a person reasonably believed an arrest had occurred. The rule first arose by statute and was triggered when a person was “held to answer” for a public offense. See Iowa Code § 795.1 (1975). The “held to answer” standard essentially meant the person was held to answer by a preliminary examination. State v. Montgomery, 232 N.W.2d 525, 526-27 (Iowa 1975). The concept of “held to answer” was unrelated to physical restraint, but concerned the appearance in court to answer the charge. See Bergman v. Nelson, 241 N.W.2d 14, 16 (Iowa 1976). Thus, the speedy-indictment rule was triggered based on circumstances that occurred within the court proceedings that started the criminal prosecution and supported the obligation of the state to properly proceed to trial or dismiss the charges. It was a straightforward approach, unrelated to conflicting facts and circumstances that can surround a war-rantless arrest.
In 1976, our legislature repealed the statutory speedy-trial provisions when it *256 established separate rules of criminal procedure to govern court proceedings. See 1976 Iowa Acts ch. 1245, § 1301, r. 27 (codified at Iowa Code ch. 813, r. 27 (1979)) (establishing the Iowa Rules of Criminal Procedure, including speedy-indictment rule). In doing so, it adopted the speedy-trial dismissal rules as a part of the rules of criminal procedure, patterned largely on the federal speedy-trial rule. See 4 John L. Yeager & Ronald L. Carlson, Iowa Practice: Criminal Law and Procedure § 1242, at 298 (1979) [hereinafter Yeager & Carlson]. The federal rule triggered the speedy-indictment requirement from the date of arrest or the filing of a formal charge against an accused, whichever occurred first. Hilbert v. Dooling, 476 F.2d 355, 357 (2d Cir.1973). Iowa followed this approach by adopting the arrest for the commission of a public offense as the triggering event for the filing of an indictment. See Iowa Code ch. 813, r. 27(2) (1979).
Nevertheless, an arrest within the context of the federal speedy-trial rule has always entailed an accusation so that an “arrest” under the Federal Act is the point at which a defendant is first charged and held, physically or in a legal sense, to answer for a charge. See United States v. Sayers, 698 F.2d 1128, 1130-31 (11th Cir.1983). As a rule implementing the constitutional right of an accused to a speedy trial, federal courts have taken the approach that the speedy-indictment time restraints were not triggered until a defendant was “the subject, of formal proceedings.” Hillegas, 578 F.2d at 457. Likewise, the legislative history of the Federal Act reflects that Congress proceeded on the “assumption ... that any arrested individual would also be a ‘charged’ or ‘accused’ individual.” United States v. Jones, 676 F.2d 327, 331 (8th Cir.1982). Accordingly, courts have uniformly held that “an arrest or summons standing alone [is] not enough to trigger the time limitations of the Speedy Trial Act.” United States v. Francis, 390 F.Supp.2d 1069, 1071 (N.D.Fla.2005).
Thus, the Iowa legislature adopted its speedy-indictment rule by using the “arrest” language of the Federal Act, which had a clear, special meaning compatible with the former “held to answer” language of Iowa’s statutory speedy-indictment rule. Moreover, there is no indication the Iowa legislature otherwise sought to alter the speedy-indictment approach when it repealed the statute and adopted the rule. See Yeager & Carlson at 298-99 (stating the Iowa rule followed “an approach not dissimilar from [the] former” statute). Instead, the legislature was merely bringing its rule in line with the federal approach.
Today, the majority repeats an error that began thirty years ago following the adoption of the speedy-indictment rule. The facts of this case simply make the error much more obvious. Instead of giving the word “arrest” the full meaning it was intended to have when the rule was adopted, we have somehow fallen off track by defining the word in the context of police custody viewed through the eyes of a reasonable person. We presumed, incorrectly, that an arrest had but one meaning. As a result, we are likely the only jurisdiction in the nation to trigger the requirement to file an indictment based on a case-specific, fact-intensive analysis of when police action rises to the level of an arrest. Moreover, this approach has resulted in a host of conflicting decisions in which “[w]hat is characterized by police as a non-arrest is occasionally found to constitute an arrest, and vice versa.” 4A B. John Burns, Iowa Practice Series: Criminal Procedure § 7:3, at 77 (2005). The analysis followed by the majority totally ignores the absence of any charges and disregards the purposes of speedy indictment. Not only is such a loose standard unnecessary *257 and detached from the purpose and aim of the right to a speedy trial, it is largely unprincipled and capable of inconsistent results. See, e.g., id. § 7:3, at 77-80 (describing numerous cases in Iowa in which the standard rendered inconsistent application); compare State v. Davis, 525 N.W.2d 837, 839 (Iowa 1994) (applying rule to OWI, first offense, prosecution to deny State’s request to toll indictment period, even though defendant was released without charges), with State v. Lasage, 523 N.W.2d 617, 620 (Iowa Ct.App.1994) (applying rule to first-degree murder prosecution to toll the speedy-indictment period when defendant was released without charges).
The error by the majority can perhaps be best revealed by the unimaginable reversal of roles created by its analysis. The majority literally places the power to commence a criminal prosecution in the hands, or mind, of the accused. Under the analysis by the majority, the reasonable belief of a person detained by police that he or she has been arrested for an unnamed criminal act forces the prosecutor to expeditiously bring an indictment against the person, even though the prosecutor never wanted to indict the person and the police never wanted to initiate a criminal prosecution. This is the type of circumstance that results when rules and statutes become disconnected from their purpose and intent.
In this case, Wing was never subjected to the burdens sought to be protected by the speedy-trial guarantee. When he was taken home instead of taken to the police station, he was “in the same position as any other subject of a criminal investigation.” MacDonald, 456 U.S. at 8-9, 102 S.Ct. at 1502, 71 L.Ed.2d at 704. Although the event may have caused “stress, discomfort, and perhaps a certain disruption in normal life,” he was “not impaired to the same degree as ... after [an] arrest while charges are pending.” Id. at 9, 102 S.Ct. at 1502, 71 L.Ed.2d at 704. His situation did “ ‘not compare with that of a defendant who has been arrested and held to answer.’ ” Id. (quoting Marion, 404 U.S. at 321, 92 S.Ct. at 464, 30 L.Ed.2d at 479). He was in the same position as any other person under investigation for a criminal offense whose right to a speedy indictment has not yet attached. Id. at 8-9, 102 S.Ct. at 1502, 71 L.Ed.2d at 704. Moreover, any actual prejudice due to any delay by the prosecution in later bringing charges is a separate issue fully protected “by the Due Process Clause and by statutes of limitations.” Id. at 8, 102 S.Ct. at 1502, 71 L.Ed.2d at 704.
Finally, even assuming the legislature did intend to create a unique speedy-indictment rule triggered by the point in time in which a reasonable person believed an arrest had occurred, the record clearly shows no such arrest took place. For sure, a reasonable person who would have observed Wing being removed from the car after the police discovered drugs in the trunk, placed in handcuffs, read his Miranda rights, and even placed in the backseat of the police vehicle would reasonably believe an arrest had occurred. Yet, the reasonable-person test considers all the relevant facts and circumstances. See, e.g., State v. Bogan, 774 N.W.2d 676, 680 (Iowa 2009) (recognizing the reasonable-person custody determinations for purposes of Miranda involve an objective analysis of all the facts and circumstances); State v. Delockroy, 559 N.W.2d 43, 46 (Iowa Ct.App.1996) (examining all facts and circumstances of police encounter to determine whether an arrest occurred). In this case, a reasonable person with knowledge of the rest of the story surrounding the stop would conclude differently. The remainder of the facts and circumstances that complete the story of *258 Wing’s police encounter are that the police had no intention or desire to use the roadside stop to make an arrest but only wanted to establish a relationship with Wing, who was known by police to be involved with drugs, which might benefit an ongoing community task force operation. Furthermore, a reasonable person viewing the totality of this encounter would also know Wing was not told at any time he was under arrest or that he would be charged with a crime, and that Wing was transported to his home from the roadside stop to continue to go on with his life without the burdens associated with a criminal prosecution. See Iowa Code § 804.14 (2007) (requiring a person making an arrest to “inform the person to be arrested of the intention to arrest”); id. § 804.22 (requiring a person placed under arrest to be brought before a magistrate without unnecessary delay). The majority failed to consider the totality of the circumstances, which clearly show Wing was never arrested. Instead, Wing was detained and released without being subjected to the process of the criminal justice system that accompanies an arrest.
This case was an opportunity to correct a mistake and make the law conform to its purpose and aim. I dissent because it was an opportunity we should have taken.