UNITED STATES of America, Appellee,

v.

James E. JONES, Appellant.

No. 81–2205.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1982.

Decided April 28, 1982.

Julius Lucius Echeles, Caroline Jaffe, Chicago, Ill., for appellant.

Thomas E. Dittmeier, U. S. Atty., Larry D. Hale, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

ROSS, Circuit Judge.

James E. Jones appeals his conviction on a two count indictment for conspiracy to possess marijuana with intent to distribute and possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846.

In September 1980, a DEA special agent, posing as a large scale drug distributor, had several conversations with Stevenson Smith regarding sale of a large quantity of marijuana. Smith told the agent that he would contact his people in Chicago and also indicated that his source in Chicago would be interested in delivering cocaine to the special agent. Arrangements were made by Smith to bring together the Chicago purchaser and the special agent.

On September 24, 1980, Smith and two other people met the special agent and two additional special agents at a St. Louis County hotel. Smith introduced James Jones to the agents as "his man." Jones told the agents that he wanted to buy 200 pounds of marijuana rather than the 300 pounds originally mentioned in Smith's conversation with the agent. Jones went with the agents to their car in the parking lot and took a sample from a bale of marijuana in the car's trunk. Smith and Jones then took the agents to a gold van parked in the lot to show the agents their money. On their way to the van, Jones asked the special agent if he would be interested in buying cocaine and indicated Jones would deliver a kilogram of cocaine to the agent the next day. Jones also said that he would return to St. Louis to purchase 250 pounds of marijuana the next day after he got the 200 pounds out on the street to his people in Chicago.

In the van the agents met Thomas McCready and after the agents counted the money they left to pick up the remaining bales of marijuana. The agents loaded four bales into two undercover cars and returned to the hotel. Upon returning to the hotel

an agent was told by Smith that Jones had limited his purchase to 200 pounds because Jones was short of cash due to a recent purchase of 12 kilograms of cocaine. After going to the parking lot, the agents told appellant to pull his van up next to their cars. The agents opened the trunks of their cars and displayed the four bales of marijuana. The trunk key of one of the vehicles was then given to Jones. The agents then entered the van with Jones and they were given over $54,000 for the marijuana. After receiving the money the agents left the van and appellant and McCready took the two bales of marijuana from the agent's car trunk and put those two bales in the van. The agents then arrested Jones, Smith and McCready.

The arrest occurred at 9:40 p. m. on September 24, 1980. Jones was taken to the DEA offices in Clayton, Missouri. The agents contacted an assistant United States attorney and the attorney authorized Jones' release. At 10:40 p. m. on September 24, 1980, Jones was released and he was told that he would be "notified." No complaint or other charges were filed by the government until July 9, 1981, when an indictment was returned. The indictment was apparently sealed until July 20, 1981. On July 21, 1981, Jones was arrested on the indictment.

Jones moved to dismiss the indictment based on an alleged violation of the Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq. A pretrial hearing was held before a United States magistrate regarding Jones' pretrial motion. At the hearing the special agent's uncontradicted testimony was that the government had delayed charging Jones for two reasons. First, until June 1981 the DEA was pursuing a number of "reverse sting" operations in the St. Louis area and there was a fear that publicity from charging a person would jeopardize the operations. Second, through May 1981, Jones and the DEA agent had frequent discussions during which Jones represented that he could set up heroin purchases for the DEA; however, Jones never provided any information.

The magistrate recommended that Jones' pretrial motion be denied and this recommendation was adopted by the district court.[1]

On appeal, Jones alleges that the district court erred in denying his motion to dismiss the indictment for violation of the Speedy Trial Act. Jones also asserts the following errors: (1) the evidence was insufficient as a matter of law to establish that he was in "possession" of the marijuana; (2) the evidence was insufficient to establish the "chain of custody" of the substance alleged to be marijuana; (3) the district court erred in failing to grant a mistrial following introduction of "other crimes" evidence regarding the purchase and selling of cocaine.

*Speedy Trial Act of 1974*

Jones alleges that the delay between his initial arrest and subsequent indictment violated 18 U.S.C. § 3161(b) of the Speedy Trial Act of 1974 (the Act). That subsection provides in pertinent part:

§ 3161. Time limits and exclusions

\* \* \* \* \* \*

(b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

Jones argues that a violation of section 3161(b) requires dismissal of the charges against him under 18 U.S.C. § 3162(a)(1) of the Act, which provides:

§ 3162. Sanctions

(a)(1) If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

The government argues that the case law and the legislative history of the Act establish that the term "arrest" as used in section 3161(b) means an arrest upon a complaint. The government also argues that the sanction of dismissal specified in section 3162(a)(1) applies by the terms of the statute only to an "individual against whom a complaint is filed."

While section 3161(a) may at first glance seem to clearly start the running of the speedy trial "clock" from arrest, it is also fairly clear that no "sanction" is provided for under section 3162(a)(1) for delay in indictment unless a complaint has been filed. However, to read the Act in this manner would create a right without a remedy. Our review of other parts of the Act, its legislative history and case law leads us to the conclusion that subsection 3161(b) is only applicable when the arrested individual is charged with an offense.

The Act specifies in subsection 3161(a) that "at the earliest practicable time" a trial date shall be set "*[i]n any case involving a defendant charged with an offense* \* \* \*" (emphasis added). Subsection 3161(d)(1) provides:

(d)(1) If any indictment or information is dismissed upon motion of the defendant, or *any charge contained in a complaint filed against an individual is dismissed or otherwise dropped*, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense

---

1. The Honorable Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri.

or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

(Emphasis added.) A similar subsection of the Act, 3161(h)(6), provides:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

\* \* \* \* \* \*

(6) If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

These latter two subsections, 3161(d)(1) and (h)(6) have been interpreted to mean:

(1) under subsection 3161(d)(1) if the complaint is dismissed upon the motion of the defendant or the government, the time limits specified in subsection 3161(b) and (c) (the 30-day time limit for indictment and the 70-day time limit for trial) begins to run anew following the filing of a subsequent complaint, indictment or information.[2]

(2) under subsection 3161(h)(6) if the information or indictment is dismissed upon the motion of the government, the time between such dismissal and reinstitution of subsequent charges is excludable, i.e., while the charges remain dismissed the time limit is tolled.

See *United States v. Peters*, 587 F.2d 1267, 1272–73 (D.C.Cir.1978).

In the recent case of *United States v. MacDonald*, —— U.S. ——, 102 U.S. 1497, 71 L.Ed.2d 696 (1982), the Supreme Court held that a four year delay between dismissal of military charges for murder and a subsequent indictment did not establish a violation of the sixth amendment right to a speedy trial. The Supreme Court in *MacDonald* stated:

In *United States v. Marion*, 404 U.S. 307, 313 [92 S.Ct. 455, 459, 30 L.Ed.2d 468] (1971), we held that the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused:

"On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him."

In addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim. *Dillingham v. United States*, 423 U.S. 64 [96 S.Ct. 303, 46 L.Ed.2d 205] (1975). Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, see *United States v. Lovasco*, 431 U.S. 783, 788–789 [97 S.Ct. 2044, 2047–2048, 52 L.Ed.2d 752] (1977), or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending.

---

**2.** It should be noted that two circuits have indicated in dicta that the prosecution should not be allowed under 3161(d)(1) to dismiss the complaint and start the clock anew *after* the

time limits for bringing an indictment have passed. *See United States v. Peters*, 587 F.2d 1267, 1273 (D.C.Cir.1978); *United States v. Hillegas*, 578 F.2d 453, 459 n.9 (2d Cir. 1978).

Similarly, the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges. Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause.[7]

[7] Our holding agrees with the determination made by Congress in enacting the Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq. The Act, intended "to give effect to the sixth amendment right to a speedy trial . . . ," S.Rep.No.93–1021, 93d Cong., 2d Sess. 1 (1974), provides that if charges are initially dismissed and later reinstated, the period between the dismissal and the reinstatement is not to be included in computing the time within which a trial must commence. 18 U.S.C. §§ 3161(d), 3161(h)(6).

Id. at ——, 102 S.Ct. at 1501.

While we recognize that MacDonald dealt with the constitutional right to speedy trial as opposed to the statutorily created rights in the Speedy Trial Act of 1974, the case does reflect the Supreme Court's view that not only the sixth amendment but also the Act requires that charges be pending for the delay to violate a right to speedy trial.

As noted in United States v. Hillegas, 578 F.2d 453 (2d Cir. 1978), the "policy and purpose" of the Speedy Trial Act has "been to expedite the processing of pending criminal proceedings, not to supervise the exercise by a prosecutor of his investigative or prosecutorial discretion at a time when no criminal proceeding is pending before the court." Id. at 456 (emphasis in original).

The legislative history, while less than precise, does reflect an assumption by Congress that any arrested individual would also be a "charged" or "accused" individual. In the House Report's general description of the time limits imposed by the bill the following comments were made:

H.R.17409 provides that all defendants charged with criminal offenses be brought to trial within 100 days of arrest or service of a summons, subject to a number of exclusions for necessary delay. The time limits are divided into three segments: the ultimate period between arrest and filing of an indictment or information would be 30 days, the period

between indictment and arraignment, 10 days, and the period between arraignment and trial, 60 days.

H.R.Rep.No.93–1508, 93d Cong., 2d Sess., reprinted in, [1974] U.S.Code Cong. & Ad. News 7401, 7414 (emphasis added). The general description also notes that exclusions from the time limits include periods of "deferred prosecution by the government." Id. at 7415. Additionally, in the House Report's "technical explanation of committee amendments" in commenting on the "arrest to indictment time limit" the following was indicated:

Section 3161(b) provides that any information or indictment charging an individual with an offense must be filed within 30 days of the date the accused was arrested or served with a summons.

Id. at 7422 (emphasis added).

The House Report also reiterates that "the adoption of speedy trial legislation is necessary in order to give real meaning to the Sixth Amendment right." Id. at 7404. Considering the Supreme Court's statement in MacDonald that the right to speedy trial is only applicable to delay while charges are pending and considering the other provisions of the Speedy Trial Act which exclude delay while no charges are pending, the term "arrest" in section 3161(b) of the Act must be construed as an arrest where the person is charged with an offense.

It should be noted that an arrested person under Rule 5 of the Federal Rules of Criminal Procedure is to be taken before the magistrate "without unnecessary delay." If the person is arrested without a warrant then a complaint must be filed when the person is taken before the magistrate. Nothing in rule 5, however, precludes the outright release of a person shortly after the arrest as was the case here. Also, Jones has not argued that the delay in prosecution violated his due process rights under the fifth amendment. See MacDonald, supra, at ——, 102 S.Ct. at 1501. We note that the proof required for such a violation requires a showing of prej-

udice and investigative delay, even if related to other persons, does not amount to a violation of due process even if prejudice is shown. *United States v. Lovasco*, 431 U.S. 783, 789–797, 97 S.Ct. 2044, 2048–2052, 52 L.Ed.2d 752 (1977); *United States v. Rogers*, 639 F.2d 438, 440–41 (8th Cir. 1981).

*Other Issues*

██ Jones argues that the evidence was insufficient as a matter of law, to establish "possession" because the government agents at all times had control of the bales of marijuana. "Possession may be actual or constructive * * *." *United States v. Hutchinson*, 488 F.2d 484, 488 (8th Cir. 1973), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). The evidence was sufficient to show that Jones obtained constructive possession when he was given the key to the agent's car trunk and obtained actual possession when he loaded the bales of marijuana into the van. The fact that the agents intended to arrest Jones and recover control of the marijuana does not negate the fact, that for however short a period of time, Jones was in actual control of the marijuana.

██ Jones also raises error in the sufficiency of the evidence regarding chain of custody of the samples of marijuana taken from the bales. There was some confusion at trial because the bales had been initially seized in August 1980 and samples were sent to the DEA laboratory. Additional samples were again sent from the bales after the sale made to Jones. The record indicates that the trial judge cleared up the confusion to his satisfaction based on examination of the dates on the seals of the exhibits regarding mailing and receipt of the samples by the DEA lab.

██ Jones also argues that the trial court erred in failing to grant a mistrial after introduction of testimony concerning possible sales of cocaine. Jones argues that this "other crimes" evidence was unfairly prejudicial and allowed the government to characterize Jones as a cocaine dealer. The government states that the evidence was admissible under Rule 404(b) of the Federal Rules of Evidence to show intent as to the distribution of marijuana. We agree that Jones' offer of sale of cocaine to the agent and other testimony regarding Jones' cocaine dealings were relevant on the issue of intent to distribute. Additionally, considering the overwhelming evidence on the issue of intent to distribute, including Jones' own statements about getting the marijuana "out on the streets" and the large amount of marijuana involved, we would find any error in the admission of this testimony harmless beyond a reasonable doubt.

Affirmed.