**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Victor VARELLA, Charles Gavin and
Raul Felix Chinea,
Defendants-Appellants.**

No. 81–5295.

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1982.

As Amended on Denial of Rehearing
March 31, 1983.

Lawrence N. Rosen, Miami, Fla., for Varella.

Donald A. Lykkebak, Orlando, Fla., for Gavin.

Alan E. Dubow, Coconut Grove, Fla., John W. Persse, Persse & Pollack, Coral Gables, Fla. (court-appointed), for Chinea.

Sara Criscitelli, Atty., Appellate Sec., U.S. Dept. of Justice, Kenneth A. Caruso, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Appeals from the United States District Court for the Southern District of Florida.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

FAY, Circuit Judge:

We are called upon to decide the appeals of three criminal defendants convicted after a jury trial in the Southern District of Florida of conspiracy to distribute and import marijuana, possession with intent to distribute marijuana, and importation of marijuana, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 21 U.S.C. § 952(a), and 21 U.S.C. § 963 (West 1976).

The appellants raise several overlapping and individual points concerning denial of motions for severance, limiting cross-examination of government informants, speedy trial violations, and admission of hearsay statements under Fed.R.Evid. 801(d)(2)(E). After careful consideration, we reject all of the appellants' contentions and affirm the district court.

*Background*

The uncontroverted facts of this case establish that appellants Chinea, Varella, and others agreed to import a large quantity of marijuana from Haiti. On April 3, 1980, co-conspirator Morris Kessler met with Charles Martinez, a trained pilot, to discuss the group's need for a pilot to fly a DC–6 loaded with marijuana from Haiti to the United States. Kessler did not know Martinez was an undercover agent for the Drug Enforcement Administration (DEA). Agent Martinez accepted the job and later met with appellants Varella and Chinea, and other co-conspirators to discuss plans for the importation scheme. On April 20, 1980, agent Martinez, accompanied by two government informants acting as his flight crew, flew the DC–6 with its marijuana cargo to the off-load site in Leesburg, Florida. The marijuana was off-loaded into trucks. Appellant Gavin, later identified as one of the individuals who stood guard during the off-loading, drove appellant Chinea, agent Martinez and his two crew members, and two other co-conspirators to an Orlando hotel.

The entire off-load operation was surveilled by DEA agents from the ground and air. The various trucks were followed by surveillance teams from the landing site and subsequently seized. Several persons were arrested that evening and all but a small quantity of marijuana was impounded.

Agent Martinez continued to act in an undercover capacity when on April 23, 1980, he met with co-conspirator Kessler in Miami to discuss the loss of marijuana. On the next day, April 24, 1980, agent Martinez met with appellant Varella and several other co-defendants to discuss the events of April 20. Agent Martinez described to them what transpired in Haiti and Orlando. Appellant Varella described the off-loading in Orlando. Appellant Varella also told several of the co-conspirators that the trucks had been seized and the authorities

knew where the group's stash houses were located. They then discussed who would be financially responsible for the loss, and whether they would also be liable for the lost profit as well as the cost of the marijuana. Doubts were expressed about the actual seizure of the contraband by the police since there had been no newspaper accounts. These discussions resumed at a final meeting on May 5, 1980, when appellants Chinea and Varella and Martinez discussed who was responsible and most able to bear the nearly two million dollar loss. The trio also discussed the possibility of another importation to recover some of the loss.

### Limitation on Cross-Examination

■ Appellants Gavin, Chinea, and Varella complain that their sixth amendment rights to confrontation were violated when the district court limited their cross-examination of the two confidential informants who served as agent Martinez's flight crew. The court sustained the government's objections to certain questions concerning the informants' names, occupations, home and business addresses, and names of cases in which they had previously testified. The appellants maintain that this background information was necessary in order to place the witnesses in their proper setting, so that their credibility and motive to testify could be tested.

Prior to trial the district court denied all requests concerning disclosure of accurate information regarding identification, home address, etc., but did order that the two witnesses be produced for interviewing by defense counsel. This was done. At trial, counsel for a non-appealing defendant (Jose Antonio Cabrera-Sarmiento) called these men as witnesses. After a lengthy hearing outside the presence of the jury, the court sustained government objections to the disclosure by the witnesses of any information which might expose them to a high risk of harm. Appellants' cross-examination followed that of counsel for Sarmiento. The informants were not called as government witnesses.

■ Cross-examination constitutes a vital component of the sixth amendment right of a criminal defendant to confront witnesses against him. *United States v. Berkowitz*, 662 F.2d 1127, 1138 (5th Cir.

1981). And, the right to cross-examine a witness effectively includes a sufficient "opportunity to place the witness in his proper setting." *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). This opportunity, however, is not unlimited, and the extent of cross-examination is committed to the sound discretion of the trial court. *Id.*, 282 U.S. at 694, 51 S.Ct. 77. "A well-recognized limitation on the right to cross-examine a witness occurs when a disclosure of the information sought would endanger the physical safety of the witness or his family." *United States v. Contreras*, 602 F.2d 1237, 1239 (5th Cir.1979), *citing Smith v. Illinois*, 390 U.S. 129, 133, 88 S.Ct. 748, 750–751, 19 L.Ed.2d 956 (1968) (White, J., concurring); *United States v. Hansen*, 569 F.2d 406 (5th Cir. 1978).

The Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) is the leading case on the scope of the government privilege to withhold from disclosure the identity of persons who furnish information of violations of the law to officers charged with enforcement of the law. In that case, the Court ordered disclosure of the identity of an informant who was an active participant in an illegal drug transaction. The test outlined in *Roviaro* remains the guide for our decisions today:

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

■ We have been called upon repeatedly to consider the balance enunciated in *Roviaro*. An analysis of the case law reveals that a factor of primary importance in striking that balance is the degree of participation exercised by the informant. *See, e.g., United States v. Ayala*, 643 F.2d 244, 246 (5th Cir. 1981); *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir.1980); *Alvarez v. United States*, 525 F.2d 980, 982 (5th Cir.1976). When the confidential in-

formant is not "an active participant in the criminal activity, but only a tipster, disclosure of the identity is not required...." *United States v. Moreno,* 588 F.2d 490, 494 (5th Cir.1979). "Thus, even though an informant is present during a critical transaction, the fact that he does not actively participate favors nondisclosure." *United States v. Gonzales,* at 75. Conversely, where an informer has played a crucial role in the alleged criminal transaction, then disclosure and production of the informer are required to ensure a fair trial. *See, e.g., United States v. Jiminez-Serrato,* 451 F.2d 523, 526 (5th Cir.1971) (informer was the only participant in transaction who could establish defendant's mens rea). And, in cases where there exists a slight possibility that the defendant might benefit from disclosure, although the informant is more than a mere tipster in the criminal transaction, the law favors nondisclosure where the government can demonstrate a compelling need to protect its informer. *United States v. Fischer,* 531 F.2d 783, 787 (5th Cir.1976).

Turning to the instant case, "our first task is to evaluate the important consideration of the extent of the confidential informant's participation in the criminal activity." *United States v. Diaz,* 655 F.2d at 588, citing *Suarez v. United States,* 582 F.2d 1007, 1011 (5th Cir.1978); *United States v. Fischer,* 531 F.2d 783, 787 (5th Cir.1976). As this Court noted in *United States v. Ayala,* "the more active the participation the greater the need for identification." 643 F.2d at 246. While the informants here certainly were more than mere "tipsters," their involvement in this drug transaction was not as integral participants. Rather, we consider their participation to have been nothing more than assisting agent Martinez

in flying the DC–6 from Haiti to the United States. Other than assisting in the operation of the aircraft, "the informant[s]' role[s] became that of ... observer[s] while the negotiations were conducted around [them]. When an informant's level of involvement in the criminal activity is that of minimal participation, this factor by itself will not compel disclosure." *Diaz,* 655 F.2d at 588. Further, the appellants have failed to establish sufficiently the importance of the informers' testimony so as to compel disclosure. Although one or both were present during certain meetings and the off-loading of the marijuana, the informers were not asked, either on direct or cross-examination, any particulars about the discussions, activities, or persons involved in the meetings among the conspirators. They were examined extensively about the amount and the packaging of the cash payments, but not about who, besides agent Martinez, was present during the payoffs. Nor were they questioned about any of the codefendants' participation in the smuggling venture. Rather, the inquiry overwhelmingly focused on collateral matters related solely to their credibility, as opposed to focusing on their observation of or participation in the charged events.

Viewing this record [1] and considering the overall role of these informants as related to the activities of the defendants, we find no error.

### Right to Speedy Trial Claim

Appellant Gavin contends that the district court erred in denying his motion to dismiss the indictment since the government violated his right to a speedy trial under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161, *et seq.* (1976) (the "Act"), and under the sixth amendment to the United States Constitution.[2]

---

1. The very able trial judge in the instant case, utilizing the *in camera* procedure specifically endorsed by this court in *United States v. Freund,* 525 F.2d 873 (5th Cir.1976), aff'd following remand, 532 F.2d 501 (5th Cir.1976), interviewed both informants and concluded that disclosure was unwarranted. A transcript of the *in camera* proceeding does not appear in the record. Although we know the government's objections to disclosure were grounded on concerns for the physical safety of the informants, we do not know what information was disclosed to the trial judge during his *in camera* interviews with the informants. "In such circumstances, we assume that the trial court's

findings are supported by the evidence and its conclusions are in accord with such cases as *Roviaro v. United States; Suarez v. United States,* 582 F.2d 1007 (5th Cir.1978);]." *United States v. Smaldone,* 583 F.2d 1129, 1133 (10th Cir.1978). Although the court advised counsel that the *in camera* hearing had been reported and that a transcript would be preserved for appeal, no defendant chose to provide this court with that portion of the record.

2. Fed.R.Crim.P. 48(b) permits a district court to dismiss an indictment if there is any unnecessary delay in bringing a defendant to trial.

The Act primarily focuses on two time periods in the criminal process. The first is from arrest or service with a summons to the filing of an indictment or information. 18 U.S.C. § 3161(b). The second is from the filing of the indictment or information to the commencement of trial. 18 U.S.C. § 3161(c)(1). Appellant Gavin's first speedy trial claim concerns the pre-indictment period.

Section 3161(b) provides,

[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

Section 3162 outlines the sanctions or remedies that are to be utilized if the Act is violated. Section 3162(a)(1) states,

[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

Appellant Gavin was arrested on probable cause without a warrant on April 20, 1980. However, no complaint or formal proceedings were filed at that time, and he was released after booking procedures were completed. The appellant was re-arrested on August 13, 1980, after the indictment was returned. A superseding indictment was returned on September 3, 1980, approximately four and one half months after the initial arrest. The appellant claims that the thirty-day arrest-to-indictment time limit of § 3161(b) was thus violated.

The government argues that the "informal" and warrantless arrest of April 20 did not trigger the time limit provision of § 3161(b). It argues that the Speedy Trial Act clock began to run on August 13, the date of the formal arrest. The government asserts that "arrest" in § 3161(b) means a formal arrest upon a judicial determination of probable cause and upon the filing of formal charges against the defendant. The September 3 indictment would then have occurred within the thirty-day limit of § 3161(b).

The Eighth Circuit has recently examined this statutory scheme and concluded that "the term 'arrest' in § 3161(b) of the Act must be construed as an arrest where the person is charged with an offense.'" *United States v. Solomon*, 679 F.2d 1246, 1251 (8th Cir.1982), *quoting United States v. Jones*, 676 F.2d 327, 331 (8th Cir.1982). The *Solomon* court reasoned,

[i]t is clear that remedial section 3162(a)(1) is not applicable to this case. It states, 'in the case of any individual against whom *a complaint is filed charging such individual with an offense*' and where the indictment is not timely filed within the meaning of section 3161(b) '*such charge ... contained in such complaint* shall be dismissed or otherwise dropped.' Section 3162(a)(1) does not state that it is applicable to the case where there is an arrest but no complaint is filed and no charges made. The [district court in *United States v. Padro,* 508 F.Supp. 184 (D.Del.1981) relied] on this observation to conclude that an arrest based upon the mere opinion of a police officer is not sufficient to trigger the Act's time limits. The court stated, '[i]t is only when a charge is leveled against a

"However, dismissal under Rule 48(b) is not required unless the constitutional speedy trial right has been flouted." *United States v. Hill,* 622 F.2d 900, 908 (5th Cir.1980).

defendant based upon a finding of probable cause by a judicial officer that the time limitation of section 3161(b) is relevant.' *United States v. Padro, supra,* 508 F.Supp. at 185.

Section 3161(b) by its own terms refers to arrest without the qualification that formal charges need be filed. The *Padro* court is correct when it implicitly recognizes that the remedy provided in section 3162(a)(1) is not relevant to an arrest without a complaint. The statute thus has a gap in its remedial provisions. It clearly sets out the applicable provision for violation of the time limits concerning complaint to indictment or information, and indictment or information to commencement of trial. But it does not specify what the remedy shall be if section 3161(b) is violated and only an arrest has occurred and no charges have been filed.

*Id.* at 1252 (emphasis in original).[3]

■ The *Solomon* court relied on *United States v. Jones,* 676 F.2d 327 (8th Cir.1982). In *Jones,* after reviewing the Act, its legislative history, and case law, a panel of the Eighth Circuit concluded that the "term 'arrest' in section 3161(b) of the Act must be construed as an arrest where the person is charged with an offense." *Id.* at 331. The *Jones* court concluded that the protections of the Act and the sixth amendment right to a speedy trial are concurrent in this respect. *Id.,* at 331. *See United States v.*

*McDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). We agree with this reasoning. Thus, in the case at bar, the Act's thirty-day time period contained in § 3161(b) did not begin to run until August 13, the date appellant Gavin was arrested and formal charges were filed against him.[4] The indictment was filed on September 3, well within the thirty-day period.

■ Appellant Gavin also contends that his statutory right to a speedy trial was impaired by the delay occasioned by joinder with his codefendants, some of whom were not immediately apprehended or had pending pretrial motions. During the four-month delay between the appellant's arraignment and the commencement of his trial, the various pretrial motions of his codefendants were resolved.[5] Most of this time is excluded from the appellant's Speedy Trial Act computation under 18 U.S.C. § 3161(h)(7), which excludes from the time limits of the Act "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Appellant Gavin does not dispute the propriety of delay as to those defendants whose motions were pending, but argues, despite the clear exclusionary language of § 3161(h)(7), that the district court abused its discretion in denying his motions for

---

3. "It has been observed that the Speedy Trial Act contains 'numerous unresolved policy issues, ambiguities, and drafting errors.' " *Solomon* at 1252, n. 11, *quoting United States v. Mulherin,* 521 F.Supp. 824, 826 (S.D.Ga.1981) (*quoting* Frase, *The Speedy Trial Act of 1974,* 43 U.Chi.L.Rev. 667, 696–97 (1976).

4. The appellant argues that even though he was released and no complaint was issued, his arrest on April 20 constituted a formal initiation of criminal proceedings as contemplated by the Act, since it was his right pursuant to Fed.R.Crim.P. 5 to be taken before a magistrate and be presented thereafter with a complaint based upon probable cause. Appellant Gavin's brief at 33. Although Rule 5 requires an arrested person be taken before a magistrate "without unnecessary delay" and a complaint filed in the event of a warrantless arrest, "[n]othing in Rule 5 ... precludes the outright release of a person shortly after the arrest as was the case here." *Jones* at 331. As emphasized by the

Second Circuit in *United States v. Hillegas,* 578 F.2d 453 (2nd Cir.1978), the " 'policy and purpose' of the [Speedy Trial] Act ... [has] been to expedite the processing of *pending* criminal proceedings, not to supervise the exercise by a prosecutor of his investigative or prosecutorial discretion at a time when no criminal proceeding is pending before the court." *Id.* at 456 (emphasis in original).

5. Section 3161 (c)(1) of the Act requires a defendant to be brought to trial within seventy days from the filing of his indictment or from the date the defendant has appeared before a judicial officer, whichever date occurs last. In this case, the operative date to commence the running of the seventy-day period is August 14, 1980, the date that the appellant was first arraigned. The jury trial commenced January 16, 1981.

severance to allow his trial to proceed more speedily. We disagree.

The primary purpose of the Speedy Trial Act is to accelerate criminal trials. Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time. *Proposed Amendments to the Ervin Bill: Hearings on S. 895,* 92nd Cong., 1st Sess. (1971) (letter to Senator Ervin from Assistant Attorney General William H. Rehnquist). Congress feared that rigid statutory time limits would force courts to disregard the principle of "judicial efficiency;" courts would be forced to "grant severances unnecessarily in multi-defendant cases 'so that a defendant whose case was moving slowly would not hold up the trial of his codefendants.'" S.Rep.No. 93–1021, 93rd Cong., 2d Sess. (1974). "In multiple defendant cases, such as major narcotic conspiracies, judges may be forced to grant severances which would otherwise not be required. This in turn would lead to more trials and more congestion." *Hearings on the 1972 Senate Subcommittee Bill, S. 754,* 93rd Cong., 1st Sess. (1972) (Testimony of Deputy Attorney General Joseph T. Sneed). Thus, reasonable delay in multi-defendant cases was specifically provided for by 18 U.S.C. § 3161(h)(7). Congress stressed that "the purpose of the provision is to make sure that [the Speedy Trial Act] does not alter the present rules on severance of codefendants by forcing the [g]overnment to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under section 3162." S.Rep.No. 93–1021, 93rd Cong., 2nd Sess. (1974). The express exclusionary command of § 3161(h)(7) and the congressional guidance gleaned from its legislative history refutes the appellant's contention that the district court abused its discretion in denying his motions for severance. The appellant's statutory right to a speedy trial was not violated by the four-month pretrial delay.

A defendant's constitutional right to a speedy trial cannot be established by any inflexible rule but can be determined only by a balancing test in which the conduct of the prosecution and that of the defendant are weighed. The United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, outlined the factors to be considered: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertions of his right; and (4) the prejudice to the defendant. "The first prong of *Barker,* the length of the delay, is the threshold 'triggering mechanism.' No inquiry into the other factors is required unless there has been a delay of such length as to be 'presumptively prejudicial.'" *United States v. Edwards,* 577 F.2d 883, 888 (5th Cir.1978), *citing Barker,* 407 U.S. at 530, 92 S.Ct. 2182. In this case, the four-month delay cannot be considered "presumptively prejudicial," so as to even trigger the balancing and require an examination of the other three factors. *United States v. Avalos,* 541 F.2d 1100 (5th Cir.1976); *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192. We note that delays longer than that involved here have been held not to constitute sixth amendment violations. *See United States v. Burns,* 662 F.2d 1378, 1384 (11th Cir.1981) (twelve-month delay); *United States v. Elorduy,* 612 F.2d 986, 988 (5th Cir.1980) ("no prejudice actually or presumptively resulted from [a five-month] delay."); *United States v. Rankin,* 572 F.2d 503, 505 (5th Cir.1978) ("A seven-month delay is not presumptively prejudicial...."); *United States v. Maizumi,* 526 F.2d 848, 851 (5th Cir.1976) ("The [ten-month] delay *per se* was not unreasonably long"). Even if we considered the other factors, appellant Gavin has not alleged any prejudice resulting from the pretrial delay. In the absence of a showing that he suffered some particular injury, such as lost evidence or prolonged pretrial incarceration, "we must presume that [appellant Gavin] relies on the anxiety inherent in any delay. Standing alone, however, this form of prejudice is insufficient to warrant reversal." *United States v. Hill,* 622 F.2d 900, 910 (5th Cir.1980); *United States v. Wilson,* 657 F.2d 755, 767 (5th Cir.1981); *United States v. Greer,* 655 F.2d 51, 53 (5th Cir.

1981); *United States v. Noll,* 600 F.2d 1123, 1127–28 (5th Cir.1979). The district court did not err by declining to dismiss the indictment either pursuant to the sixth amendment or pursuant to the Speedy Trial Act.

### Denial of Severance

The point pressed most strenuously on appeal by appellant Chinea is that the district court committed reversible error in failing to grant one or more of his motions for severance. Appellant Chinea does not argue that joinder was improper under Fed. R.Crim.P. 8(b). The appellant instead claims that he was prejudiced by the joint trial and entitled to relief under Fed.R. Crim.P. 14.[6]

Under Rule 14, the decision to grant a severance is committed to the sound discretion of the district court, and an appellant must show that a denial of severance resulted in specific and compelling prejudice in order to obtain reversal. As we recently observed in *United States v. Lippner,* 676 F.2d 456, 464 (11th Cir.1982):

> Both the Eleventh and former Fifth Circuits repeatedly have observed that a severance under Rule 14 is discretionary with the trial judge. As this court recently stated:
>
> > Our analysis of this claim must begin with the accepted principle that defendants jointly indicted should be so tried. *United States v. Sullivan,* 578 F.2d 121, 123 (5th Cir.1978). An exception to this rule may be enforced where such joinder would cause the defendant undue prejudice. F.R.Cr.P. 14. In determining a motion for severance brought on such grounds, the trial judge is empowered to exercise sound discretion in balancing possible prejudice to the defendant against governmental concern for judicial economy. *United States v. Staller,* 616 F.2d 1284, 1294 (5th Cir.1980). Inherent in every joint trial is, of necessity, some degree

of bias. Only in the event such prejudice appears to be *compelling* does severance become warranted. *United States v. Perez,* 489 F.2d 51, 65 (5th Cir.1973).

The following test for assessing the existence of "compelling prejudice" has been adopted by this circuit:

> '[w]hether under all circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.'

*Tillman v. United States,* 406 F.2d 930, 935 (5th Cir.1969) (*citing Peterson v. United States,* 344 F.2d 419, 422 (5th Cir. 1965)). *See also United States v. Zicree,* 605 F.2d 1381, 1388–89 (5th Cir.1979). *United States v. Brock,* 669 F.2d 655, 660 (11th Cir.1982)(footnote omitted). *See United States v. Thevis,* 665 F.2d 616, 647 (5th Cir.1982); *United States v. Welch,* 656 F.2d 1039, 1053 (5th Cir.1981).

Specifically, appellant Chinea contends that he should have been tried separately from appellant Varella because of their mutually antagonistic defenses. At trial both appellants did in fact assert antagonistic, albeit similar defenses. Each attempted to minimize his own involvement, and denied knowingly participating in the conspiracy. Each one described his limited role as one of assisting the other codefendant by performing specific tasks without knowledge of the ultimate purpose of the other's illegal efforts. These allegations, however, were refuted by the evidence adduced at trial. There it was established

---

**6.** Fed.R.Crim.P. 14 provides, in pertinent part: If it appears that a defendant ... is prejudiced by a joinder ... of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

that appellants Chinea and Varella were both instrumental in planning the importation and distribution scheme. Together they met with agent Martinez and discussed the smuggling plans, including timing, location of the landing field, and payment to the crew. In short, the government demonstrated that both men participated together, as well as individually, in the crucial events arising throughout the course of the conspiracy. Thus appellant Chinea's assertion that he was acting simply as an unknowledgeable subordinate and assistant to codefendant Varella was totally unfounded. Moreover, this trial was not so difficult or complex that the jury could not have properly differentiated the evidence as to each individual defendant. We hold, therefore, that the district court did not abuse its discretion in denying appellant Chinea's severance motions.[7]

7. In our recent decision in *United States v. Berkowitz*, 662 F.2d 1127 (5th Cir.1982) we held that "a mere showing of some antagonism and prejudice [from a joint trial] is insufficient to require overturning a denial of severance by the district court ... In this circuit, to compel severance the defenses must be more than merely antagonistic—they must be antagonistic to the point of being mutually exclusive. *Id.* at 1133. Recognizing that the test for when antagonistic defenses are irreconcilable or mutually exclusive has been expressed in various forms, we prescribed the test to be applied in this circuit:

> [W]e hold that the defense of a defendant reaches a level of antagonism (with respect to the defense of a co-defendant) that compels severance of that defendant, if the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant... This sort of conflict between defendants creates the compelling prejudice that mandates severance. Such compelling prejudice does not arise with respect to a defendant where the conflict concerns only minor or peripheral matters which are not at the core of his defense. Ultimately, the test is whether the defendant received a fair trial.

*Id.* at 1133–34. In *Berkowitz*, we found that antagonistic defenses asserted by two codefendants, which were very similar to the trial defenses asserted by appellants Chinea and Varella, were not mutually exclusive. There, "each defendant attempted to minimize his own involvement, and denied joining or participating in the [drug] conspiracy. Each one described his role as simply making an initial

Appellant Chinea also contends that the district judge erred in denying him the opportunity to rebut certain prejudicial comments made by codefendants in their closing arguments. We find no abuse of discretion by the district judge in this ruling.

### Admission of Evidence

Agent Martinez gave extensive testimony regarding incriminating statements made by several conspirators following their arrest and seizure of the marijuana on April 20, 1980. The district court admitted this testimony on the ground that the post-April 20 statements were made in furtherance of a joint venture involving the three appellants. *See* Fed.R.Evid. 801(d)(2)(E); *Krulewitch v. United States,* 336 U.S. 440, 443–44, 69 S.Ct. 716, 718–719, 93 L.Ed. 790 (1949). The appellants argue, however, that the district court erred in admitting

introduction and cast the other as the more active participant." *Id.* at 1132. Finding that these antagonistic defenses did not compel severance, we reasoned,

> the essence or core of each defendant's defense—noninvolvement in the criminal activity—was not in conflict, and indeed could be construed to be quite consistent, *i.e.,* neither were criminally involved. Although the defendants concededly disagree on some details, neither defendant's defense required the jury to find the other guilty. Nor was it necessary for the jury, in order to believe the core of testimony offered on behalf of one defendant, to disbelieve testimony offered on behalf of the other defendant. The jury, if it chose to discredit the government's case, could have concluded that Vafaie's involvement ended with giving his telephone number to confidential informant Nieves and that Van Coughnett's conduct was similarly limited to making an initial introduction, so that neither had the intent to join in the conspiracy alleged in the indictment. Considering the testimony offered by each defendant, the jury rationally could have accepted the defense theory of both, of only one, or of neither. We cannot say that we are left with a definite and firm conviction that the district court abused its discretion.

*Id.*

In our finding that appellants Chinea and Varella's trial defenses were unsupported by the evidence, we are equally certain that the court's holding and rationale in *Berkowitz* is dispositive of appellant Chinea's severance claim.

the agent's testimony since the joint venture had terminated on April 20 when several codefendants were arrested and the marijuana was seized. We disagree.

 The duration and termination of a conspiracy is determined by the particular facts of each case. *United States v. Hickey,* 596 F.2d 1082, 1089–90 (1st Cir.1979); *United States v. Knuckles,* 581 F.2d 305, 313 (2nd Cir.1978). Here, the district court heard extensive testimony about the continuing efforts of the conspirators to find out what happened to their marijuana. For over one week after the April 20 debacle they debated whether the government had in fact effected the arrests and seizure. They also met to discuss how to minimize their losses, including the possibility that agent Martinez could try to recover the abandoned plane. They also debated the apportionment of the loss and possible recovery through another importation. This evidence clearly demonstrated the continuing plan of the conspiracy. *United States v. Celaya-Garcia,* 583 F.2d 210, 212 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1259, 59 L.Ed.2d 481 (1979). Thus the district court properly found that the appellants' joint venture continued past April 20, and that the conspirators' incriminating statements were made in furtherance thereof. Agent Martinez's testimony recounting such statements was admissible.

*Conclusion*

We have rejected all the contentions raised in this appeal. The judgments of the district court are AFFIRMED.