880 F.2d 414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ralph E. DEAN, Petitioner-Appellant,
v.
Ronald C. MARSHALL, Supt., Respondent-Appellee.
 No. 88-3515.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1989.
 
 Before BOYCE F. MARTIN and NATHANIEL R. JONES, Circuit Judges, and JULIAN A. COOK*, Jr., District Judge.
 PER CURIAM.
 
 
 1
 This habeas corpus case has been before us earlier and was remanded for review of the Magistrate's Recommendations. With that review completed, Ralph E. Dean argues that the sixth amendment was violated when he was denied a speedy trial in Richland County, Ohio.
 
 
 2
 On November 10, 1986, a complaint was filed in the Mansfield, Ohio, Municipal Court charging Dean with the murder of Gloria Williams. On November 12, 1976, Ohio authorities arrested and arraigned Dean for murder in violation of Ohio Revised Code Section 2903.02. On November 22, 1976, while Dean was in custody on the murder charge, he was also arrested under an Ohio Governor's Warrant issued at the request of the Commonwealth of Kentucky. Kentucky sought Dean's removal to Kentucky to face murder charges there. On that same day, the Mansfield, Ohio murder charge was dismissed in order to give Kentucky jurisdiction over Dean.
 
 
 3
 From November 22, 1976 to January 21, 1977, Ohio held Dean on a Fugitive Warrant in the Richland County Jail at Mansfield. While in Mansfield, Dean filed a writ of habeas corpus seeking to dismiss the Governor's Warrant and to avoid extradition to Kentucky. Immediately prior to a hearing on the matter in the Richland County Court of Common Pleas on January 21, 1977, however, Dean waived extradition to Kentucky. Dean was surrendered to Kentucky officials on that date.
 
 
 4
 In Kentucky, Dean was charged with the murder and robbery of Clarence Siegman. On October 18, 1977, pursuant to a plea bargain, Dean entered a plea of guilty to manslaughter. He was sentenced to a term of 20 years, and incarcerated at the Kentucky State Reformatory at Lagrange, Kentucky.
 
 
 5
 In hopes of transferring to a less demanding environment, Dean sought information from Ohio on the charges pending there. In a letter dated January 11, 1977, he was advised there were none. In February, 1979 Dean, was moved to a minimum security farm at the Eddyville penitentiary. Thereafter, Dean made no further inquiries about charges pending in Richland County, despite the fact that while he was still incarcerated in Kentucky he received a copy of an affidavit of the Prosecutor of Richland County, William McKee, which had been filed in a civil case that Dean brought against a publisher in federal court in New York. In the affidavit, executed in June, 1980, the prosecutor stated that an indictment charging Dean with the murder of Gloria Williams was still pending in Ohio.
 
 
 6
 In August, 1981, the Kentucky State penitentiary paroled Dean. On September 18, 1981 he was arrested by Louisville, Kentucky police pursuant to a Kentucky Governor's Warrant issued at the request of the Governor of Ohio. The warrant was issued on a secret indictment which had been returned sometime between November 22 and December 31, 1976 by the September, 1976 term of the grand jury of Richland County. The indictment charged Dean with one count of aggravated murder in the death of Gloria Williams, in violation of Ohio Revised Code Section 2903.01, and one count of kidnapping of Frank Carter, in violation of Ohio Revised Code Section 2905.01. The indictment had been kept secret by the Richland County Clerk of Courts, Gene Coffey, by oral order of the Court of Common Pleas, until it was docketed on September 17, 1981.
 
 
 7
 After his arrest in Kentucky, Dean filed a writ of habeas corpus opposing the Kentucky Governor's Warrant to extradite him to Ohio. The Kentucky courts ordered Dean's extradition to Ohio, and he was returned to Ohio and to Richland County authorities on November 14, 1981. On January 11, 1982, Dean entered pleas of not guilty and not guilty by reason of insanity. Dean subsequently filed a motion to dismiss the charges against him in Richland County on the ground that he had been denied a speedy trial in violation of state law and the sixth amendment. On May 13, 1982, the Court of Common Pleas conducted a hearing on the motion. After the hearing, the court issued a judgment entry, containing findings of fact and conclusions of law, denying Dean's motion. On July 27, 1982 Dean's jury trial began. He was found guilty as charged. On August 11, 1982, Dean was sentenced to a term of life imprisonment, with parole eligibility in 20 years, on his conviction for aggravated murder, consecutive with a term of 5 to 15 years on his conviction for kidnapping.
 
 
 8
 Dean appealed his conviction, through counsel, directly to the Court of Appeals of Richland County, Ohio, Fifth Appellate District. There he also raised the issue of the lack of a speedy trial. The Court of Appeals overruled each assignment of error and affirmed the judgment of conviction on February 18, 1983. Finally, on May 18, 1983, the Ohio Supreme Court denied Dean leave to appeal.
 
 
 9
 On December 15, 1983, Dean petitioned the United States District Court for the Southern District of Ohio, Western Division, for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. In his petition, Dean, through counsel, asserted that he was denied his constitutional right to a speedy trial; that he was denied due process by the improper handling of the indictment; and that the trial court's jury instruction improperly placed the burden of proof of insanity on Dean. The district court submitted the issue to a magistrate, who found that although the delay in trying Dean was excessive and unexplained, Dean suffered no prejudice as a result of the delay.
 
 
 10
 In considering Dean's claim, the district court, adopting the magistrate's report, found that: (1) with respect to the length of the delay:
 
 
 11
 The delay in the present case was extraordinary. A period of approximately five years elapsed between the filing of the secret indictment and the unsealing and docketing of the indictment. Trial did not commence for another ten months, although part of this delay was attributable to petitioner's attempt to forestall extradition and to forensic testing. Consideration of the ten month period aside, this case was not of such a complex nature as to require a period of five years of trial preparation. Thus, the period of delay is presumptively prejudicial and must be weighed against the government.
 
 
 12
 (2) With respect to the reason for the delay, the district court concluded:
 
 
 13
 Respondent has posited no reason for delay. Petitioner avers no knowledge as to why the prosecution may have delayed in bringing petitioner to trial. Thus, although is it unknown whether the prosecution was simply negligent in failing to bring petitioner to trial in a timely manner, or whether the delay was intentional, this factor must be weighed against the state, since the burden is on respondent to demonstrate a valid reason for the delay.
 
 
 14
 (3) With respect to the defendant's assertion of the right to speedy trial, the district court found the following:
 
 
 15
 Petitioner did assert his right to a speedy trial. On four occasions over a period of five years, he wrote to Clerk of Courts concerning disposition of the charges against him and contacted former counsel. Respondent asserts that this factor should not be weighed against the state, since petitioner fought the extradition to Ohio. However, this fact does not eliminate from our consideration petitioner's previous attempts to be brought to trial in a timely fashion. Thus, his assertions of his right to a speedy trial during his incarceration weigh in favor of a finding that petitioner's Sixth Amendment right was violated by the pretrial delay.
 
 
 16
 In fact, in a letter written by the court clerk of Richland County, Ohio responding to Dean's request, the clerk indicated that she was forwarding Dean's letter to the county's prosecutor.
 
 
 17
 Dean challenges the district court's finding concerning the forth factor in Barker v. Wingo, 407 U.S. 514, 528 (1972), which deals with the prejudice accruing to a defendant as a result of delay. In this case the district court found that the prejudice accruing to Dean was minimal, and therefore weighed this factor, apparently very heavily, against granting Dean's petition. The court indicated:
 
 
 18
 Petitioner was not prejudiced by the delay. Petitioner cites Dillingham v. United States, 423 U.S. 64 (1975), for the proposition that a delay of five years between the initial arrest and the unsealing of the indictment gives rise to a presumption of prejudice. However, Dillingham establishes only that a defendant need not show actual prejudice in order for the period between arrest and indictment to be included in calculation of the period of pretrial delay. Dillingham does not hold that prejudice may be weighed in a defendant's favor solely on the basis of the length of delay.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 Petitioner does not allege that he was prejudiced in his defense preparation as a result of the delay, and such prejudice is not apparent from the record. Petitioner's only defense at trial was insanity. The psychologist who testified on behalf of the defense had examined and evaluated petitioner in 1977, a number of months after the date of the crimes, and the report that he compiled at the time was admitted into evidence. The transcript discloses that the psychologist's memory concerning pertinent facts and impressions was, for the most part, intact. A review of the transcript also does not disclose an inability on the part of key witnesses to remember pertinent facts. Additionally, there is no indication in the record that key witnesses could not be located or that evidence had been lost as a result of the pretrial delay.
 
 
 22
 Petitioner alleges that he was prejudiced by the delay "for the same reasons cited in Smith v. Hooey, [393 U.S. 384 (1969) ], at 378-80", and enumerated above, but fails to make any specific allegations of prejudice. Petitioner's contention is not well-taken. He was not prejudiced by the delay in the sense that he was subjected to more stringent conditions of imprisonment as a result of the pending charges or to an increased period of incarceration. Petitioner was initially informed in response to his request to be placed in a minimum security facility that this was not possible, since detainers from counties in Kentucky and the detainer from Richland County, Ohio were pending against him. However, petitioner was informed in early 1979 that no detainers were pending against him, and he was transferred to a minimum security facility. Additionally, despite the pendency of the secret indictment, petitioner was paroled from prison in Kentucky. Thus, the only prejudice regarding incarceration that petitioner could have conceivably suffered was loss of the opportunity to serve a concurrent sentence. However, such prejudice was minimal in light of the fact that petitioner could have served only two years of consecutive terms of life imprisonment and five to fifteen years imprisonment concurrent with the two-year sentence he served in Kentucky. The apparent absence of any actual restraints on petitioner flowing from the Ohio charges supports a finding that he did not suffer actual prejudice as a result of the delay.
 
 
 23
 Petitioner does not specifically allege anxiety or concern stemming from the state's failure to resolve the charges against him in a timely manner. Because petitioner has not alleged or shown any particular injury that he has suffered as a result of the delay, such as prolonged pretrial incarceration or lost evidence, we must presume that in asserting his claim, petitioner relies on the anxiety inherent in any delay. However, standing alone, prejudice of this nature is insufficient to warrant reversal of a conviction. United States v. Varella, 692 F.2d 1352, 1359 (11th Cir.1982), cert. denied, Gavin v. United States, 463 U.S. 1210 91983), citing, United States v. Hill, 622 F.2d 900, 9810 (5th Cir.1980). This rule applies with particular force in this case. By virtue of his pretrial incarceration on unconnected charges and the secrecy of the pending indictment, petitioner's situation was less oppressive than that of other pretrial detainees, since he was not subjected to public condemnation, interference with his employment, financial strain, or an unduly lengthy period of pretrial imprisonment as a consequence of the pending charges. Thus, the prejudice inherent in the pretrial delay is insufficient to warrant reversal of petitioner's conviction.
 
 
 24
 Upon consideration of all of the relevant facts, we find that although the Sate of Ohio was dilatory in its efforts to bring petitioner to trial, his constitutional right to a speedy trial was not violated. In light of the peculiar circumstances of this case, the factors of length of delay, reason for the delay, and petitioner's assertion of his right to a speedy trial do not weigh as heavily in petitioner's favor as they would in a case in which an otherwise nonincarcerated accused is held on pending charges under a public indictment. This is so because most of the interest sought to be protected by the Speedy Trial Clause, including protection against undue pretrial restraint, anxiety stemming from knowledge of the pending charges, and accompanying public accusation, are not implicated to the same extent in a case where an accused is incarcerated in another jurisdiction and his indictment is not a matter of personal or public knowledge. The concern most strongly implicated under such circumstances is that of prejudice to the accused's ability to present his defense. Because petitioner has failed to demonstrate any actual injury flowing from the delay, his claim that his right to a speedy trial was violated by the inordinate pretrial delay is not well-taken.
 
 
 25
 We agree the delay was uncalled for, however, we also agree that the petition should be denied.
 
 
 26
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation